VETALORO v. PERKINS et al.

(Circuit Court, D. Massachusetts.   April 17, 1900.)

No. 881.

WRONGFUL DEATH—STATUTORY ACTION FOR DAMAGES—RIGHT OF ALIEN TO MAINTAIN.

Section 2 of the employers' liability act of Massachusetts (Acts 1887, c. 270), which gives a right of action to the widow or dependent next of kin of an employé who is instantly killed, or dies without conscious suffering, as the result of negligence for which the employer is liable under the other provisions of the act, is highly remedial, merely taking away a common-law obstacle to a recovery for an admitted tort, and should receive a liberal construction. The act nowhere makes any distinction in terms between citizens and aliens, and the fact that the widow of a deceased employé is a citizen and resident of a foreign country will not debar her from the right to maintain an action thereunder to recover damages for his death.

On Answer in Abatement and Motion to Dismiss.

H. J. Jaquith and William Reed Bigelow, for plaintiff.
Nason & Proctor, for defendants.

COLT, Circuit Judge.   This is an action brought by the widow of an employé to recover damages for the death of her husband, under section 2 of the employers' liability act of Massachusetts (Acts 1887, c. 270). It is contended that this action cannot be maintained, because it appears that the plaintiff is a citizen and resident of Italy. There is nothing in the language of the act which limits the right of recovery to citizens or residents of Massachusetts, and there seems to be no sound reason for holding that nonresident aliens are excluded from the benefits conferred by section 2. Nonresident aliens have the same right to sue in the courts of Massachusetts as citizens. Roberts v. Knights, 7 Allen, 449; Peabody v. Hamilton, 106 Mass. 217. To adopt such a construction of the statute would be to say that employers may escape liability for negligence, where an employé is instantly killed or dies without conscious suffering, by the employment of alien laborers. This consideration alone is sufficient to condemn such a construction, in the absence of some express limitation in the statute itself.

The Massachusetts statute, with some variations of detail, is copied from the English statute (43 & 44 Vict. c. 42). It was intended to remove certain bars to the right of employés to sue for personal injuries based on their relation to their employer. Ryalls v. Mechanics' Mills, 150 Mass. 190, 191, 22 N. E. 766, 5 L. R. A. 667. "The purpose of the legislature in enacting this statute, as its title indicates and its provisions show, was to soften some of the harsh features of the old common law of master and servant, and so to place upon the statute books a law beneficial to the laboring classes. This obvious purpose furnishes a key to the interpretation of the whole act. Its terms are to be given a liberal construction, favorable to the employé just so far as the plain meaning of the words used will permit." Williams, St. Torts Mass. p. 122, § 114.   Section 1

of the act declares the liability of employers for injuries suffered by employés in their service (1) by reason of any defect in the condition of ways and works of machinery, due to the negligence of the employer or any person in his service; (2) by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence; (3) by reason of the negligence of any person in the service of the employer who has charge or control of any signal, switch, locomotive engine, or train upon a railroad. In case the injury results in death, the legal representative of such employé shall have the same right of compensation and remedy against the employer as if the employé had not been an employé of nor in the service of the employer, nor employed in its work. It is not suggested that an alien employé, or, in case death should result from the injury, the representative of such employé, could not maintain an action under this section. Section 2, under which the present suit is brought, reads as follows:

"Where an employee is instantly killed or dies without conscious suffering, as the result of the negligence of an employer, or of the negligence of any person for whose negligence the employer is liable under the provisions of this act, the widow of the deceased, or in case there is no widow, the next of kin, provided that such next of kin were at the time of the death of such employee dependent upon the wages of such employee for support, may maintain an action for damages therefor and may recover in the same manner, to the same extent, as if the death of the deceased had not been instantaneous, or as if the deceased had consciously suffered."

This section extends the liability of employers under the act to cases of instant death resulting from the negligence of the employer, and gives the widow or next of kin the right to maintain an action. In construing the words at the close of the section, "in the same manner, to the same extent, as if the death of the deceased had not been instantaneous, or as if the deceased had consciously suffered," it was said by the court in Ramsdell v. Railroad Co., 151 Mass. 245, 249, 23 N. E. 1104, 7 L. R. A. 155: "The meaning obviously is that the right of action given in the first part of the section shall not be affected by the fact that the deceased died instantaneously or without conscious suffering." The manifest purpose of section 2 is to give the widow and next of kin of an employé the same right to bring an action in the case of death as the employé in case he had survived would have had under section 1. No distinction is made between citizens and aliens in either section. The only limitation imposed is that the next of kin, in order to maintain an action, must be dependent for support on the wages of the employé. To exclude nonresident aliens from the right to maintain an action under section 2 is to incorporate into the act a restriction which it does not contain. It is to refuse compensation to a certain class of persons for a real injury recognized by statute law. It is to relieve employers with respect to some employés from the exercise of due care in the employment of safe and suitable tools and machinery and, competent superintendents. It is to offer an inducement to employers to give a preference to aliens and to discriminate against citizens. It is to hold that the legislature of Massachusetts intended by this act to declare that employers should

not be liable 'for the grossest negligence which results in the instant death of an alien employé in cases where his widow or next of kin happen to reside in a foreign country.

The argument urged in support of the proposition that a nonresident alien cannot maintain an action under section 2 is as follows: The right to recover for the death of a person did not exist at common law. The statutes of the various states creating such a right are based upon Lord Campbell's act (9 & 10 Vict. c. 93, A. D. 1846). No English case has been found in which it has been held that Lord Campbell's act extended to nonresident aliens, and the same is true of the decisions in the various states under similar acts. Further, it has been expressly held by the supreme court of Pennsylvania and the circuit court of the United States for the district of Colorado, under statutes framed after Lord Campbell's act, that nonresident aliens cannot maintain an action. Deni v. Railroad Co., 181 Pa. St. 525, 528, 37 Atl. 558; Brannigan v. Mining Co. (C. C.) 93 Fed. 164.

In Deni v. Railroad Co. the court bases its decision upon the following grounds:

"No case has been cited to us, nor are we aware of any, in which a nonresident alien, whether husband, widow, child, or parent of the deceased, has maintained a suit, under the act of April 26, 1855 (P. L. 309), to recover damages for an injury causing death. Our legislation on this subject is in accord with the English statute of August 26, 1846, and therefore the decisions of the English courts construing this statute are often referred to in cases grounded upon our acts of April 15, 1851, and April 26, 1855. But no case has been brought to our notice in which an English court has held that a nonresident alien is entitled to the benefits conferred by the act of 1846. The same may be said of the decisions of the courts of our sister states having statutes similar to our own. * * * Our statute was not intended to confer upon nonresident aliens rights of action not conceded to them or to us by their own country, or to put burdens on our own citizens to be discharged for their benefit. It has no extraterritorial force, and the plaintiff is not within the purview of it. While it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children, and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it. * * * There is nothing on the face of the act which limits the protection afforded by it to our own citizens. It is referred to as another illustration of the general rule that we do not legislate for persons beyond our jurisdiction."

In Brannigan v. Mining Co., Judge Hallett, in an oral opinion, follows the Pennsylvania case. He says:

"I have examined the statute of Pennsylvania, and upon this question it is the same as the statute of Colorado; that is to say, the right of action is given to certain representatives of the deceased generally, and without any statement as to whether they shall be citizens of Pennsylvania or residents of Pennsylvania. * * * The reasoning of the [Pennsylvania] court upon the subject is clear and full to the point that such a statute cannot be taken to be for the benefit of people residing in foreign parts. * * * Under the circumstances, I see no reason for denying the force and effect of this opinion. It appears to be founded upon good reason, and to be as applicable in Colorado as it is in Pennsylvania."

The decisions of the court in both these cases rest largely upon the proposition that no case can be found in which Lord Campbell's act has been extended to nonresident aliens, and that the act has

no extraterritorial force. This is hardly in accordance with the fact. A more correct statement, it seems to me, would be to say that the English courts have never questioned 'the right of a nonresident alien to maintain an action in the common-law courts under Lord Campbell's act. In The Explorer, L. R. 3 Adm. & Ecc. 289, Sir Robert Phillimore held that the provisions of Lord Campbell's act extended to a case where the person in respect to whose death damages were sought to be recovered was an alien, and was, at the time of the wrongful act which caused his death, on board a foreign vessel on the high seas. Although that case has been overruled so far as it held that a court of admiralty had jurisdiction in an action in rem in which damages were claimed under Lord Campbell's act (The Vera Cruz, 9 Prob. Div. 96, 10 App. Cas. 59; The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727), the right of a nonresident alien to maintain such a suit in the common-law courts was never doubted or questioned either before or since that decision. Such a doctrine is clearly repugnant to the spirit and purpose of Lord Campbell's act. In Webb, Pol. Torts, p. 77, it is said:

"Railway accidents, towards the middle of the present century, brought the hardship of the common-law rule into prominence. A man who was maimed or reduced to imbecility by the negligence of a railway company's servants might recover heavy damages. If he died of his injuries, or was killed on the spot, his family might be ruined, but there was no remedy. This state of things brought about the passing of Lord Campbell's act (9 & 10 Vict. c. 93, A. D. 1846), a statute extremely characteristic of English legislation."

In Maryland there is a statute substantially like Lord Campbell's act. The statute of the District of Columbia, although differing in details, is essentially the same as the statute of Maryland. A suit was brought in the District of Columbia to recover for the death of a person caused by the negligence of a railroad company in the state of Maryland. The supreme court held that the action could be maintained. Stewart v. Railroad Co., 168 U. S. 445, 448, 449, 18 Sup. Ct. 106, 42 L. Ed. 538. The opinion of the court in that case is instructive. Mr. Justice Brewer, speaking for the court, said:

"A negligent act causing death is in itself a tort, and, were it not for the rule founded on the maxim, 'Actio personalis moritur cum persona,' damages therefor could have been recovered in an action at common law. * * * The purpose of the several statutes passed in the states, in more or less conformity to what is known as Lord Campbell's act, is to provide the means for recovering the damages caused by that which is essentially and in its nature a tort. Such statutes are not penal, but remedial, for the benefit of the persons injured by the death. An action to recover damages for a tort is not local, but transitory, and can, as a general rule, be maintained wherever the wrongdoer can be found. Dennick v. Railroad Co., 103 U. S. 11, 26 L. Ed. 439. * * * Where the statute simply takes away a common-law obstacle to a recovery for an admitted tort, it would seem not unreasonable to hold that an action for that tort can be maintained in any state in which that common-law obstacle has been removed. * * * The substantial purpose of these various statutes is to do away with the obstacle to a recovery caused by the death of the party injured. Both statutes in the case at bar disclose that purpose. By each the death of the party injured ceases to relieve the wrongdoer from liability for damages caused by the death, and this is its main purpose and effect."

Under an act of the state of Alabama to suppress murder, lynching, and assaults, it was held by the supreme court of that state that

statutes passed for the security and protection of life, in the absence of clear and unexceptionable language forcing a contrary conclusion, will be held to apply as well to aliens and mere sojourners as to citizens, and the fact that the person murdered and the widow or next of kin were aliens is no defense to recovery under the act. Luke v. Calhoun Co., 52 Ala. 115.

The purpose of section 2 of the Massachusetts statute was to remove a common-law obstacle, and to create a right of action for an admitted tort. The language of the section does not restrict the right to any particular class or classes of persons. It says "the widow of the deceased"; "the next of kin." These words comprehend every widow, and all next of kin, whether citizens, residents, aliens, or nonresident aliens. The only qualification mentioned is that the next of kin must be dependent on the wages of the employé for support. I can find no sound or just reason for holding that the legislature intended to exclude nonresident aliens from the benefits of this section. If statutes of this character have no extraterritorial force, as was held in Deni v. Railroad Co., supra, it is difficult to see why citizens or residents of other states are not excluded as well, in the absence of any constitutional prohibition.

This whole act relating to the liability of employers is highly remedial. It was designed to benefit all employés. It has received, and should continue to receive, a liberal construction. It certainly should not receive a narrow and inequitable construction, founded upon any distinction between citizens and aliens, or residents and nonresidents. The answer in abatement is overruled, and the motion to dismiss denied.