EVA SZYMANSKI *vs.* FERDINAND BLUMENTHAL and JULIEN STEVENS ULLMAN, trading as F. BLUMENTHAL & CO.

*Foreign Attachment—Plea in Abatement—Pleading—Demurrer—
Statute; Construction of—Aliens—Widow of Deceased
Employee—Right of Action—Damages—Mar-
ried Women.*

1. Under *Section 2, Chapter 31, Vol. 13, Laws of Delaware (Rev. Code, 788)*, which provides that "wherever death shall be occasioned by unlawful violence or negligence, and no suit be brought by the party injured to recover damages during his or her life, the widow of such deceased person, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned," the widow of one who lost his life from an injury occurring to him whilst actually engaged in our city and State in behalf of one of our industrial establishments may maintain the action, although before and at the time of the injury, and of the commencement of the suit, she was an alien, and actually resident in a foreign country.

2. The said statute nowhere in its terms, or by implication, excludes non-resident aliens, or restricts to citizens or resident aliens its operation.

3. It should be, and is our true policy to invite to our country and State the industrious and worthy people of foreign lands and to do nothing calculated to repel or dircourage them. To promote it both national and State legislation has been enacted from time to time. Our legislation, both State and national, has been more liberal and progressive than that of foreign nations in respect to aliens; and in this and other States the legislation in regard to married women has steadily grown more liberal and enlightened.

(*June 10, 1902.*)

JUDGES GRUBB and PENNEWILL, sitting.

*Levi C. Bird, Andrew E. Sanborn* and *Edwin R. Cochran, Jr.,* for plaintiff.

*William S. Hilles* for defendants.

Superior Court, New Castle County, May Term, 1902.

FOREIGN ATTACHMENT CASE (No. 68, May Term, 1902). Demurrer to plea in abatement.

The facts appear in the opinion of the Court.

GRUBB, J., delivering the opinion of the Court:

This action is brought under *Section 2, Chapter 31, Volume 13, Laws of Delaware (Rev. Code, 788)*, by the widow of a deceased employee, for the purpose of securing damages for the loss of her husband's comfort, support, etc., occasioned by his death, which, as she alleges, was caused by the negligence of the defendants.

Said section is as follows :

" Wherever death shall be occasioned by unlawful violence or negligence, and no suit be brought by the party injured to recover damages during his or her life, the widow of any such deceased person, or if there be no widow, the personal representatives may maintain an action for and recover damages for the death thus occasioned."

The plaintiff's declaration in effect alleges that her husband, at the time of the injury which caused his death, was residing in this State for the purpose, at least, of employment for hire in the industrial establishment of the defendants in this city and county, wherein he was then actually engaged in his occupation as a servant in their employ.

The defendants' plea in abatement does not deny these facts respecting the husband, but alleges that the plaintiff, his widow, was before and at the time of said injury, and of the commencement of this suit, a resident of Russia and a non-resident alien.

The general demurrer of the plaintiff admits the facts alleged in the defendants' plea in abatement.

The question raised by the pleadings, therefore, is not whether under our said statute, the action will lie where both the defendant

and the plaintiff are non-resident aliens, or where both or either of them are such and the cause of action arose outside of our State and jurisdiction.

In the case before us, as presented by the facts of record, the defendants are residents of Delaware, the alleged injury and cause of action occurred here, the deceased husband was at the time resident here—temporarily, at least, for the purpose of his said employment—and was then engaged in behalf of one of our industrial interests, although the plaintiff, now his admitted widow, was then an alien and actually, if not in legal contemplation, a resident of the Empire of Russia.

As we must confine our decision to the facts exclusively as they appear here on record, the sole question for our determination is whether this widow, the plaintiff, is entitled to recover in this suit, under our statute, being now, and having been before and at the time of the alleged injury and death of her said husband, and of the commencement of this suit, an alien and actually resident within the Empire of Russia.

This question is a novel one in Delaware. In this country it has arisen in four adjudicated cases only, so far as we have yet found, under statutes and circumstances generally similar to those before us. In two of these the adjudications have been in favor of the plaintiff non-resident alien, and in the other two to the contrary.

*Vetaloro vs. Perkins, 101 Fed. Rep., 393 ; Mulhall vs. Fallon, 176 Mass., 265 ; Brannigan vs. U. G. Mining Co., 93 Fed. Rep., 164 ; Deni vs. Pa. R. R. Co., 181 Pa., 525.*

In England the question has been raised, but it does not yet seem to have been conclusively and satisfactorily settled there. For, in *The Explorer, 3 Law Rep. Admiralty and Eccles., 289-90 (1869)*, whilst the question was not directly raised, yet the Court seems necessarily to have recognized or assumed the right of a non-resident alien to maintain the action under Lord Campbell's act. It is true that afterwards this case was overruled in the English

courts, which held that that the Court of Admiralty had no jurisdiction to entertain claims under Lord Campbell's act. But, in doing so, said Court did not hold or assert, as a ground of their disapproval, that a non-resident alien plaintiff could not maintain an action under said act in the proper court.

Subsequently, in *Adams vs. British & Foreign Steamship Co., L. R., 2 Q. B., 430, (1898)*, Darling, J., sitting in the Court of Queen's Bench held that a non-resident alien plaintiff could not maintain an action under Lord Campbell's act, and that it is a rule of construction in England that acts of Parliament do not apply to aliens, at least if they be not even temporarily resident in that country, unless they expressly refer to them.

In that case the plaintiff was a non-resident alien mother (not widow), and the fatal injury did not occur in Great Britain.

In *Pollock's Law of Torts, p. 61*, the learned author concludes his review of Lord Campbell's act, as follows :

" In the United States there exist almost everywhere statutes generally similar to Lord Campbell's act; but they differ in details from one another.

" The tendency seems to be to confer on the survivors, both in legislation and in judicial construction, larger rights than in England."

Such being the state of judicial and professional opinion in England, and the conflict of the adjudications in this country, the question before us is one of much difficulty and no little embarrassment, in view of the brief time at our disposal under the urgent pressure of *nisi prius* trials now burdening us.

We have given the question raised by the pleadings here much thought, and all the examination and consideration of our statute and the authorities practicable under the circumstances.

We have reached the conclusion that the greater weight of reason and of sound authority is in favor of the view that under

the circumstances of this case the plaintiff is entitled to sue under our statute.

In its terms our statute nowhere expressly, or by implication, excludes non-resident aliens from, or restricts to citizens or resident aliens its operations. There is nothing within its provisions which manifests or discloses any such legislative intent.

We are not prepared to hold that any such rigid, exclusive anti-alien rule of construction as that asserted by Darling, J., in *Adams vs. British & Foreign Steamship Company* above cited, is applicable in this country, or entitled to recognition and adoption here, and especially in a case like that before us.

The history, genius and policy of our institutions, as well as the general development of the resources and industries, and the steady growth of the population and material prosperity of our State and nation, to say nothing of the enlightened progress of the age, seem to be against such a rule.

In this case it is admitted that the plaintiff's husband lost his life from an injury occurring to him whilst actually engaged in our city and State in behalf of one of our industrial establishments.

The plaintiff sues to recover damages for the injury she has suffered by her loss of his aid in supporting her and supplying her daily wants, etc.

If he lost his life whilst here contributing to the development of the industries and the progress and welfare of our State and country, it seems but just and reasonable that our State should allow his widow the use of its appropriate judicial tribunal and mode and means of redress for the wrong and injury shown to have been done to her within its limits by its own citizens.

It should be and is our true policy to invite to our country the industrious and worthy people of foreign lands and to do nothing calculated to repel or discourage them. To promote it both national and State legislation has been enacted from time to time. Our legislation, both State and national, has been more liberal and progressive than that of foreign nations in respect to aliens.

Again, in this and other States, the legislation in regard to married women has steadily grown more liberal and enlightened.

In 1865, and prior to the passage of the act in question, our "Act for the benefit of married women" was enacted (*Chap. 572, Vol. 12*), which provided a new and marked addition to the rights of married women. Since then still more liberal legislation has been enacted in their behalf.

In respect to the statute now under consideration it must be remembered that, prior to the enactment of Lord Campbell's act of 1846, it was a recognized maxim of the common law in England, and subsequently in this country, that no action at law was maintainable against a person who by his wrongful act, neglect or default may have caused the death of any person.

This doctrine was first judicially declared in England by Lord Ellenborough, in 1808, in *Baker vs. Bolton, 1 Campb., 493*, wherein he announced the proposition that " in a civil court the death of a human being could not be complained of as an injury."

Hence compensation in damages was not recoverable for either the injury to the deceased, or· the loss resulting from his death to those who were permanently deprived of his society, protection or support.

But so unsatisfactory—if not irrational—were the reasons given for this alleged common law rule, and so objectionable were the hardships and injustice of its operation, that relief was afforded by Lord Campbell's act, which conferred a right of action for the benefit of the wife, husband, parent and child of the person whose death shall have been wrongfully caused by another.

Our statute of 1866, like the English act, is designed to afford relief from the burdens and injustice of said common law rule. Consequently it necessarily implies a disapproval of the illiberality of the rule, and indicates a more liberal legislative purpose and policy.

In view of all the foregoing considerations, and of others

which may be suggested, we hesitate to adopt and apply to the statute before us the English rule of statutory construction as asserted by Darling, J., in the case heretofore cited.

We prefer to hold, as we do, that that our Legislature must reasonably be presumed to have recognized and intended to promote our more liberal and progressive policy, and that, therefore, they did not intend to restrict the application and operation of said *Section 2, Chapter 31, Volume 13,* to citizens or resident aliens merely.

Accordingly we consider that the plaintiff in this case, in view of the facts as presented by the record here, is entitled to sue in this action under what we deem to be the proper construction of said Section 2 of the act.