[Civil No. 792.  Filed March 20, 1903.]

[71 Pac. 941.]

JAMES BONTHRON et al., Plaintiffs and Plaintiffs in Error, v. THE PHŒNIX LIGHT AND 'FUEL COMPANY, a Corporation, Defendant and Defendant in Error.

1. Death by Wrongful Act—Right of Action—Non-Resident Aliens May Maintain—Rev. Stats. Ariz. 1887, Pars. 2145, 2149, 2150, Construed.—Non-resident aliens may institute and maintain an action for injuries resulting in death caused by wrongful act, under paragraph 2145, *supra*, providing that "An action for actual damages on account of injuries causing the death of any person may be brought in the following cases . . .": paragraph 2149, *supra*, providing that "The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been so caused"; and paragraph 2150, *supra*, providing that "The action may be brought by all parties entitled thereto, or by any one or more of them for the benefit of all."

ERROR to the District Court of the Third Judicial District in and for the County of Maricopa.  Webster Street, Judge. Reversed.

The facts are stated in the opinion.

J. L. B. Alexander, for Plaintiffs in Error.

That non-resident aliens may bring a suit for death caused by wrongful act, see *Vetaloro* v. *Perkins*, 101 Fed. 393; *Mulhall* v. *Fallon*, 176 Mass. 266, 79 Am. St. Rep. 309, 57 N. E. 386, 54 L. R. A. 934; *Luke* v. *Calhoun Co.*, 52 Ala. 115.

C. F. Ainsworth, for Defendant in Error.

Plaintiffs in error, being non-resident aliens, were not intended to be included among those who were entitled to the benefits of the provisions of title XXXVI of the Revised Statutes of 1887, giving an action for death caused by wrongful act. *Brannigan* v. *Union Gold Mining Co.*, 93 Fed. 164; *Deni* v. *Pennsylvania R. R. Co.*, 181 Pa. St. 525, 59 Am. St. Rep. 676, 37 Atl. 558.

VIII Ariz.—9

KENT, C. J.—The plaintiffs in error brought an action in the district court to recover damages for the death of their son, caused by the alleged negligence of the defendant company. The complaint alleges that the plaintiffs are residents of the province of Ontario, Dominion of Canada, and that the decedent, their son, was of the age of twenty-five years at the time of his death, and left surviving him his parents, these plaintiffs, but no wife or children; that no administrator has been appointed; and that the plaintiffs, being the only parties entitled to bring the action, bring it jointly for the benefit of each. The complaint also sets up facts showing the death, and alleged negligence of the defendant. A demurrer to the complaint on the grounds that the complaint does not state facts sufficient to constitute a cause of action, and that the plaintiffs have no legal capacity to sue, being non-resident aliens, was sustained by the lower court, and judgment entered thereon against the plaintiffs, and the judgment so entered is now brought by writ of error to this court for review.

The only question brought to our attention, and to be decided, is whether the statutes of Arizona confer upon non-resident aliens the right to institute and maintain an action for injuries resulting in death caused by wrongful act. The statutes of the territory applicable, in force at the time this action was instituted, are found in title 36 of the Code of 1887:—

"Sec. 2145. An action for actual damages on account of injuries causing the death of any person may be brought in the following cases: . . .

"Sec. 2149. The action shall be for the sole and exclusive benefit of the surviving husband, wife, children, and parents of the person whose death shall have been so caused. . . .

"Sec. 2150. The action may be brought by all the parties entitled thereto, or by any one or more of them, for the benefit of all."

It is the established rule that an action against a person for damages for injuries causing death cannot be maintained at common law. In 1846 Parliament passed the Fatal Accidents Act, commonly known as "Lord Campbell's Act" (9 and 10 Vict., c. 93). In this country from time to time thereafter the several states passed similar acts, differing

generally only in respect to the persons who were entitled to maintain the action, and for whose benefit the same should be prosecuted.

The supreme court of the United States has held, under a similar statute as to liability in New Jersey, that the right to recover may be asserted in New York by an administrator appointed in New York, and the court says: "The advocates of this view [that the right of action is limited to an administrator appointed in New Jersey] interpolate into the statute what is not there, by holding that the personal representative must be one residing in the state, or appointed by its authority. The statute says the amount recovered shall be for the exclusive benefit of the widow and the next of kin. Why not add here, also, by construction, 'if they reside in the state of New Jersey'? It is obvious that nothing in the language of the statute requires such a construction. Indeed, by inference, it is opposed to it. The first section makes the liability of the corporation or person absolute, where the death arises from their negligence. Who shall say that it depends upon the appointment of an administrator within the state?" *Dennick* v. *Railroad Co.*, 103 U. S. 11, 26 L. Ed. 439.

As is stated in a note on this question in 54 L. R. A. 935, "In regard to the rights of aliens to sue, it is believed that all of the acts passed by the different state legislatures are identical with Lord Campbell's act; that is to say, there is no express provision contained in any of them that the action may be maintained by a non-resident alien." In this country the question whether such action may be so maintained by a non-resident alien has been determined in five instances by the courts; two decisions holding that such action cannot be maintained, and three decisions in favor of its maintenance. The Pennsylvania supreme court, in 1897, in the case of *Deni* v. *Pennsylvania R. R. Co.*, 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676, held that the statute was not intended to confer upon non-resident aliens rights of action not conceded to them, or to put burdens upon the citizens of that state, to be discharged for their benefit; that it had no extraterritorial force; that the mother of the decedent, a resident of Italy, was not within the purview of it; and that a construction which would include non-resident alien husbands, widows, children, and parents of the decedent was obviously opposed

to the spirit and policy of the statute. In this case the court bases its decision partly on the ground that as no statute of Italy was shown authorizing the maintenance of a similar action there, a construction should not be given the statute which would confer upon non-resident aliens rights of action not conceded to them or to citizens of this country by the laws of such foreign country.

The federal circuit court in Colorado, in 1899, in the case of *Brannigan* v. *Union Gold Mining Co.*, 93 Fed. 164, followed the Pennsylvania case, but gave no reasons for its concurrence, except its approval of the reasoning in the Pennsylvania case. In the opinion in each of these cases the statement is made that no case has been brought to the attention of the court in which an English court, in construing the parent act, has held that a non-resident alien is entitled to its benefits; and the lack of such construction by the English courts seems, from the statements in the opinions, to have had much weight in the conclusions reached. At that time, however, there had been several such actions in the English courts, brought by such aliens, where the question had not been raised or decided, and prior to the decision in the Colorado federal court, though not referred to in that opinion, one case, at least, where, the question having been raised, the court had decided against the right of the alien to maintain it.

In 1875 the supreme court of Alabama, in the case of `Luke` v. *Calhoun County*, 52 Ala. 115, held that a citizen of Great Britain could maintain a similar action; but the act under which the action was brought was a special act to suppress murder, lynching, etc., by which it was provided that certain persons who were injured by a death caused by a riot, etc., could maintain an action against the county; and, though the question involved was substantially the same as here presented, the court based its decision largely upon the purpose intended to be accomplished by the statute,—to wit, the suppression of murder; holding that the purpose of the act would not be accomplished if a distinction was drawn between residents and aliens.

In April, 1900, the circuit court of the United States for the district of Massachusetts, in the case of *Vetaloro* v. *Perkins*, 101 Fed. 393, construing the Employer's Liability Act of Massachusetts, giving the widow or next of kin a right of

action in certain cases, held in favor of the right of a non-resident alien to maintain the action, disapproving of the decisions in the Pennsylvania and Colorado federal court cases above cited. In the course of the opinion Judge Colt says: "I can find no sound or just reason for holding that the legislature intended to exclude non-resident aliens from the benefits of this section. If statutes of this character have no extraterritorial force, as was held in *Deni* v. *Pennsylvania R.R. Co., supra*, it is difficult to see why citizens or residents of other states are not excluded as well, in the absence of any constitutional provision." In March, 1900, the supreme court of Massachusetts, in the case of *Mulhall* v. *Fallon*, 176 Mass. 266, 57 N. E. 286, 54 L. R. A. 934, 79 Am. St. Rep. 309, held the right of action existed in a non-resident alien, following the federal decision in that district. We quote a portion of the opinion of Mr. Chief Justice Holmes: "We come, then, to the more difficult question—whether the plaintiff can claim the benefit of the act. However this may be decided, it is not to be decided upon any theoretic impossibility of Massachusetts law conferring a right outside her boundary lines. In *Manville Co.* v. *Worcester*, 138 Mass. 89, 52 Am. Rep. 261, where a Rhode Island corporation sought to recover for a diversion of waters from its mill in Rhode Island by an act done higher up the stream in Massachusetts, it was held, following earlier decisions, that there was no such impossibility, although the point was strongly urged. It is true that legislative power is territorial, and that no duties can be imposed by statute upon persons who are within the limits of another state. But rights can be offered to such persons, and if, as is usually the case, the power that governs them makes no objection, there is nothing to hinder their accepting what is offered. The same principle is recognized, without discussion, in *Lumb* v. *Jenkins*, 100 Mass. 527, where a non-resident alien was held entitled to take land by descent. So, after discussion, as to a non-resident's right to sue. *Peabody* v. *Hamilton*, 106 Mass. 217."

In England, in 1898, in the case of *Adam* v. *British and Foreign S. S. Co.*, [1898], 2 Q. B. 430, 67 L. J. Q. B. 844, the court held that the provisions of Lord Campbell's act do not apply for the benefit of aliens abroad, and therefore the representative of an alien whose death had been caused by

the negligence of a British subject outside the jurisdiction of the court could not maintain an action to recover damages in respect of the death; that it is a principle of English law that the acts of Parliament do not apply to aliens unless the language of the statute expressly refers to them; and that, as there is no express intention in the act to give to non-resident aliens the right, such right cannot be inferred from the act.

In 1901, in the King's Bench Division, the question was presented to the court in the case of *Davidsson v. Hill*, 70 L. J. Q. B. 788; and the court held that the representative of an alien, whose death on the high seas was caused by the negligence of a British subject, can maintain an action for damages under Lord Campbell's act, when such alien was, and his representative is, resident in a foreign country. The court, in the opinions rendered by the two justices, disapproves of the reasoning and the conclusions reached by the court in the case of *Adam v. British and Foreign S. S. Co.*, *supra*, and considers and distinguishes the cases relied upon by the court in the latter case to support the view taken by it. The court goes on to say (quoting from the opinion of Mr. Justice Kennedy): "It seems to me, under all the circumstances, and looking at the subject-matter, more reasonablé to hold that Parliament did intend to confer the benefit of this legislation upon foreigners as well as upon subjects, and certainly that, as against an English wrong-doer, foreigners might maintain an action under the statutes in question. . . . Here the plaintiff seeks to enforce her claim against an English subject, and I cannot see why she should not do so. If she cannot enforce her claim, we should have this anomaly, as it seems to me: If a foreigner and an Englishman serving on the same ship were both drowned on the high seas by the same collision, negligently caused by an English vessel, the widow of the one could, and the other could not, obtain from the owners of the ship in fault that reparation which our legislation in these statutes has declared to be just. Let me add that the view which I take has the weighty authority of Sir Robert Phillimore in *The Explorer*, L. R. 3. Adm. & Ecc. 289, after argument. The decision in *The Explorer* was, no doubt, overruled by the court of appeal and the House of Lords in *The Vera Cruz*, 9 Prob. Div. 96, 10 App. Cas. 59,

but, as I understand the judgment of the House of Lords, on a different point altogether,—namely, that the court of admiralty had no jurisdiction to entertain an action *in rem* for loss of life under Lord Campbell's act. And it is not, I think, wholly undeserving of notice that in the case of *The Bernina* (1888), 13 App. Cas. 1, which was litigated in 1886 and 1887,—that is, two years after the decision in *The Vera Cruz*,—and was carried up to the House of Lords, one of the two successful claimants of damages under Lord Campbell's act, in an action *in personam* against the owners of the wrongdoing ship, was, as I have ascertained from the admiralty registry of Bagdad, one Habiba Harone Toeg, of Bagdad, the mother (as appears from the statement in the judgment of Lord Esher), the administratrix of Moses Aaron Toeg, a passenger on a ship from London to Bushire, who lost his life in the collision caused by the negligence of the defendants' servants in the course of the voyage, and who, as I presume from his name and his mother's nationality, was himself a foreigner. No question of her right to recover on the ground of nationality, either of herself or of the deceased, was raised by the defendants, and therefore the case is not in any sense a decision in favor of the right. But in a case contested as persistently as this was, it is difficult to suppose that the question would not have been raised, had it been one in which the point could be rightly and successfully taken. I am of opinion that judgment must be for the plaintiff.'' And quoting from the opinion of Mr. Justice Phillimore: ''I have still to consider the decision and reasoning of my Brother Darling in *Adam* v. *British and Foreign S. S. Co.* That decision is in point, and, if we decide now in favor of the plaintiff, we must disagree with it. It rests mainly, I think, upon the principle that acts of Parliament are to be deemed not to apply to non-resident aliens unless the court is compelled so to apply them. There are a number of decisions upon the construction of the Merchant Shipping Act, 1854, which set forth this principle as applicable to the construction of statutes imposing a burden upon a foreigner. Perhaps the strongest of these is *Cope* v. *Doherty*, but even in this case the reservation of Lord Justice Knight-Bruce at page 621 of the report in 2 De G. & J. would make me pause. On the other hand, where it is a case of giving a remedy to a foreigner

the decision of Dr. Lushington in *The Milford* (1858), Swab. 362, and the constant practice which has followed upon that decision, is the other way. This latter position is, I think, sound. Our courts are not only open, but open equally to foreigners as to British subjects, and foreigners who have the benefit of the English common law have also the benefit of English statutes. At any rate, where a statute brings the English law into harmony with the law of the foreigner, as in the case of *The Milford,* I think this must be so.''

We do not think that in order to entitle an alien to maintain this action specific authority therefor must be granted such alien by the legislature. The act is broad and comprehensive, and by its terms includes any surviving husband, wife, child, or parent, irrespective of their residence or citizenship; and this includes aliens, in the absence of any restrictive legislation. We know of no rule of law that prohibits the legislature from extending such rights to non-resident aliens, or prevents their accepting the same. As Mr. Chief Justice Holmes said, in effect, *supra,* legislative power is territorial, and restricted thereto only so far as it imposes duties on persons outside its jurisdiction, and not in so far as it confers benefits. The object of the act is to extend beyond the limits of the common law the right to recover reparation for a wrong, and we fail to see why, the wrong having been committed, the same reparation should not be made, whether those entitled to it are citizens of a state of our Union, or citizens of that country whose law we have inherited, and whose legislation in this instance we have adopted. In the absence of any constitutional provision, the same principle under which we extend this right to citizens in other parts of our country beyond our territorial limits having the same law in force applies to its extension by us to citizens of another country having the same law in force. An alien can maintain in our courts an action to enforce rights cognizable at common law. A statute authorizing a right of action, if declaratory merely of the common law, in the absence of a specific restriction, would not exclude aliens, or prevent them from availing themselves of its benefits. There is no difference in principle between such a case and a statute which grants rights not cognizable at common law, or extends rights beyond the limits fixed by the common law. In the absence of a specific re-

striction, the legislature must be presumed, by its enactment enlarging rights common to all, to have intended that such enlargement of rights be common to all. We think the doctrine cited by counsel for defendant in error, as quoted approvingly by the supreme court of Pennsylvania in *McCarthy's Appeal,* 68 Pa. St. 217,—"We do not legislate for men out of our jurisdiction,"—is not one that commends itself, or is in accord with the spirit of our age or our institutions, and should not be inferred or read into a statute which in its terms is broad and comprehensive, and contains no suggestion of limitation as to citizenship or residence. A construction of such a statute with respect to its application to rights of aliens thereunder which will include such aliens is more in accord with the liberal policy of our government and the decisions of our courts in regard to the enforcement of their rights, when they grow out of or are connected with commercial interests or business relations. It is not a valid objection thereto to urge, as is urged in this case, that the act is penal in its nature, and its terms should therefore be strictly construed, for, if such were its nature, there is nothing in the terms of the act which excludes an alien, and a literal or strict construction thereof is rather in favor of than against its application to an alien. The supreme court of the United States has held, however, that such an act is not penal, but remedial. *Stewart* v. *Baltimore etc. R. R. Co.,* 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537.

We think the weight of authority, both in this country and in England, is in favor of the contention of the plaintiffs in error, and that the learned court erred in sustaining the demurrer and entering judgment thereon for the defendant. The judgment is reversed and the case remanded for a new trial.

Sloan, J., Davis, J., and Doan, J., concur.