KANEKO v. ATCHISON, T. & S. F. RY. CO. et al.

(Circuit Court, S. D. California, S. D.     August 31, 1908.)

No. 1,345.

DEATH—ACTION FOR WRONGFUL DEATH—SCOPE OF STATUTE.

Nonresident aliens are entitled to the benefit of Code Civ. Proc. Cal. § 377, which provides that "when the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Death, § 37.]

At Law.   On demurrer to complaint.

Byron Waters, for plaintiff.
A. S. Halsted, for defendant San Pedro, L. A. & S. L. R. Co.

WELLBORN, District Judge.   This is an action brought by an administrator to recover damages for the death of his intestate, at the time a resident of Riverside county, Cal., alleged to have been occasioned through the negligence of the defendants.   The heirs are a widow and three children, subjects of the emperor of Japan and residents of that country, and neither of whom has ever been in the United States.   The abstract and only question raised by the demurrer is whether or not, under section 377 of the Code of Civil Procedure of California, nonresident aliens, who are heirs of the deceased, can maintain the action therein provided for.   Said section, as far as pertinent here, is as follows:

"When the death of a person, not being a minor, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death. * * * *"

The Supreme Court of California has not passed upon the question, and the decisions construing similar statutes outside of this state are inharmonious.   The cases denying the right of action are as follows: Deni v. Railroad Co., 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676; Maiorano v. B. & O. Ry. Co., 216 Pa. 402, 65 Atl. 1077, 116 Am. St. Rep. 778; McMillan v. Spider Lake, etc., Co., 115 Wis. 332, 91 N. W. 979, 60 L. R. A. 589, 95 Am. St. Rep. 947; Brannigan v. Union Gold Mining Co. (C. C.) 93 Fed. 164; Roberts v. Great Northern Ry. Co. (C. C.) 161 Fed. 239; Zeiger v. Pa. R. Co. (C. C.) 151 Fed. 348; Adam v. British, etc., S. S. Co., [1898] 2 Queen's Bench Div. 430.   The cases upholding the right of action are the following: Mulhall v. Fallon et al., 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309 (in this case, it should be noted, the opinion was delivered by Holmes, Chief Justice of Massachusetts, now one of the Associate Justices of the United States Supreme Court); Pittsburgh, etc., R. Co. v. Naylor, 73 Ohio St. 115, 76 N. E. 505, 3 L. R. A. (N. S.) 473, 112 Am. St. Rep. 701; Philpott v. Mo. P. R. Co., 85 Mo. 164, 167; Chesapeake, O. & S. W. R. Co. v. Higgins, 85 Tenn. 620, 622, 4 S. W. 47; Augusta R. R. Co. v. Glover, 92 Ga. 132, 142, 143, 18 S. E. 406; Kellyville C. Co. v. Petraytis,

195 Ill. 215, 63 N. E. 94, 88 Am. St. Rep. 191; Luke v. Calhoun Co., 52 Ala. 115; Szymanski v. Blumenthal (Del.) 3 Pennewill, 558, 52 Atl. 347; Romano v. Capitol City B. & P. Co., 125 Iowa, 591, 101 N. W. 437, 68 L. R. A. 132, 106 Am. St. Rep. 323; Tanas v. Municipal G. Co., 88 App. Div. 251, 84 N. Y. Supp. 1053; Bonthron v. Phœnix L. & F. Co., 8 Ariz. 129, 71 Pac. 941, 61 L. R. A. 563; Renlund v. Commodore M. Co., 89 Minn. 41, 93 N. W. 1057, 99 Am. St. Rep. 534; Pochahontas C. Co. v. Rukas, 104 Va. 278, 51 S. E. 449; Vetaloro v. Perkins (C. C.) 101 Fed. 393; Davidsson v. Hill, [1901] 2 King's Bench Div. 606.

The argument used in the early cases in support of defendants' contention that nonresident aliens are excepted from the statute seems to be as follows: The right of action for the death of a person did not exist at common law, and is purely statutory. Such statutes have no extraterritorial force, and are presumed to operate only between and upon citizens of the states respectively enacting them, and not, in any way to affect the rights of foreigners, either by way of restricting or augmenting their natural rights. To include nonresident aliens is against the spirit and policy of the statutes. These statutes are based upon Lord Campbell's act, and no English case holds that said act extends to nonresident aliens. Deni v. Penn. R. Co., 181 Pa. 525, 37 Atl. 558, 59 Am. St. Rep. 676, decided May 27, 1897, summarized the argument as follows:

"No case has been cited to us, nor are we aware of any, in which a nonresident alien, whether husband, widow, child, or parent of the deceased, has maintained a suit, under the act of April 26, 1855 (P. L. 309), to recover damages for an injury causing death. Our legislation on this subject is in accord with the English statute of August 26, 1846, and therefore the decisions of the English courts construing this statute are often referred to in cases grounded upon our acts of April 15, 1851 (P. L. 674, § 19), and April 26, 1855 (P. L. 309). But no case has been brought to our notice in which an English court has held that a nonresident alien is entitled to the benefits conferred by the act of 1846. The same may be said of the decisions of the courts of our sister states having statutes similar to our own. * * * Our statute was not intended to confer upon nonresident aliens rights of action not conceded to them or to us by their own country, or to put burdens on our own citizens to be discharged for their benefit. It has no extraterritorial force, and the plaintiff is not within the purview of it. While it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children, and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it. * * * There is nothing on the face of the act which limits the protection afforded by it to our own citizens. It is referred to as another illustration of the general rule that we do not legislate beyond our jurisdiction."

These views, it seems to me, and as will appear later on, could never have been otherwise than inconclusive, and now carry even less weight than when they were first expressed. The statute of California (section 377 of the Code of Civil Procedure above quoted) contains no language excluding nonresidents or aliens from its operation, but, without any restrictive phraseology, confers a right of action upon the heirs of the deceased. It is difficult to find words more comprehensive or unequivocal than those the statute employs. Nor is there anything in the nature or objects of the statute which jus-

tifies the exception claimed by defendants.   On the contrary, quoting from Szymanski v. Blumenthal, supra:

"The history, genius, and policy of our institutions, as well as the general development of the resources and industries, and the steady growth of the population and material prosperity of our state and nation, to say nothing of the enlightened progress of the age, seem to be against such a rule.   In this case it is admitted that the plaintiff's husband lost his life from an injury occurring to him whilst actually engaged in our city and state in behalf of one of our industrial establishments.   The plaintiff sues to recover damages for the injury she has suffered by her loss of his aid in supporting her and supplying her daily wants, etc.   If he lost his life whilst here contributing to the development of the industries and to the progress and welfare of our state and country, it seems but just and reasonable that our state should allow his widow the use of its appropriate judicial tribunal and mode and means of redress for the wrong and injury shown to have been done to her within its limits by its own citizens."

In Renlund v. Commodore Mining Company, 89 Minn. 41, 47, 93 N. W. 1057, 1059, 99 Am. St. Rep. 534, the court says:

"Turning, now, to the language of our own statute, there is not a word or expression indicating an intention to limit its application to persons residing within the state, or to residents of sister states.   The object of the statute was to remedy the harshness of the common law, and in some degree compensate those dependent upon the person killed.   It would indicate an unnatural and selfish motive to draw a distinction between the dependent relatives who reside in another state or foreign government and those residing in our own state; and, unless such intention is manifest, we are not at liberty to assume that the lawmakers were legislating upon any such basis.   As stated by the learned Chief Justice in Mulhall v. Fallon, supra, it is well known that a large percentage of the laborers who come within the borders of the state to seek employment leave their families and relatives behind.   We think it is more in accordance with the spirit of the age that this statute be construed to have a universal application, and that it is intended to restore to the dependent, wherever the place of residence, in some degree, compensation for a loss resulting from an act of negligence committed within the state."

In Bonthron v. Phœnix Light & Fuel Co., 8 Ariz. 129, 71 Pac. 941, 61 L. R. A. 563, 566, the court says:

"We do not think that, in order to entitle an alien to maintain this action, specific authority therefor must be granted such alien by the Legislature.   The act is broad and comprehensive, and by its terms includes any surviving husband, wife, child, or parent, irrespective of their residence or citizenship; and this includes aliens, in the absence of any restrictive legislation.   We know of no rule of law that prohibits the Legislature from extending such rights to nonresident aliens, or prevents their accepting the same.   As Mr. Chief Justice Holmes said, in effect, supra, legislative power is territorial, and restricted thereto only so far as it imposes duties on persons outside its jurisdiction, and not in so far as it confers benefits.   The object of the act is to extend beyond the limits of the common law the right to recover reparation for a wrong, and we fail to see why, the wrong having been committed, the same reparation should not be made, whether those entitled to it are citizens of a state of our Union, or citizens of that country whose law we have inherited, and whose legislation in this instance we have adopted.   In the absence of any constitutional provision, the same principle under which we extend this right to citizens in other parts of our country beyond our territorial limits having the same law in force applies to its extension by us to citizens of another country having the same law in force.   An alien can maintain in our courts an action to enforce rights cognizable at common law.   A statute authorizing a right of action, if declaratory merely of the common law, in the absence of a specific restriction, would not exclude aliens, or prevent them from availing themselves of its benefits.   There is no difference in principle between such a case and a

statute which grants rights not cognizable at common law, or extends rights beyond the limits fixed by the common law. In the absence of a specific restriction, the Legislature must be presumed, by its enactment enlarging rights common to all, to have intended that such enlargement of rights be common to all. We think the doctrine cited by counsel for defendant in error by the Supreme Court of Pennsylvania in McCarthy's Appeal, 68 Pa. 217: 'We do not legislate for men out of our jurisdiction'—is not one that commends itself, or is in accord with the spirit of our age or our institutions, and should not be inferred or read into a statute which in its terms is broad and comprehensive, and contains no suggestion of limitation as to citizenship or residence. A construction of such a statute with respect to its application to rights of aliens thereunder, which will include such aliens, is more in accord with the liberal policy of our government, and the decisions of our courts in regard to the enforcement of their rights, when they grow out of or are connected with commercial interests or business relations."

To the same effect is the following extract from "case note" in Pittsburgh, etc., R. Co. v. Naylor, 73 Ohio St. 115, 76 N. E. 505, 3 L. R. A. (N. S.) 473, 112 Am. St. Rep. 701:

"To deny the right to maintain an action for negligent injuries resulting in death, under a statute broad enough to cover every case of negligent killing, simply on the ground that the beneficiaries of the action are nonresident aliens, seems contrary to the policy and spirit of our institutions and the purpose for which such statutes have been enacted. Since the object of an act giving a right of action for injuries causing death is to supply an omission in the common law, and to provide reparation for a wrong for which at common law there was no redress, it is difficult to see why, such wrong having been committed, the same reparation should not be made, whether those entitled to it are citizens of the United States or of some other country. The purpose of such legislation is the protection of those who suffer pecuniary loss by the death of a person resulting from the negligence of another, and the manifest intention of the Legislature is that a person guilty of such negligence shall not escape the consequences of his act by the death of the victim of his negligence, as he did at common law, but shall respond in damages to those who have suffered pecuniary loss thereby; and, as stated in Alfson v. Bush Co., 182 N. Y. 393, 75 N. E. 230, 108 Am. St. Rep. 815: 'It is difficult to conceive of any argument, springing from public policy, sound reason, or a proper discrimination between the rights of the citizen and the alien, that should prevent the alien husband, wife, or next of kin of a laborer killed by reason of his employer's negligence from receiving those damages that a jury has awarded a local legal representative. * * * The damages are imposed upon a negligent employer as compensation to those who suffer by his act, and there is no valid reason, as it seems to us, why they should not be paid to the survivors, whether residing here or in some foreign jurisdiction. The statute not only benefits the survivors, but protects the laboring man, as it tends to enforce observance by the employer of the rule requiring him to furnish the servant a safe place in which to work. * * * Throughout the last century the emigrants from many lands came to us in constantly increasing numbers, swelling the ranks of labor, and a majority of them ultimately attaining the dignity of citizenship. Many of these toilers in mines, on public works, railroads, and the numberless fields of manual labor, receive a moderate wage, and are compelled to leave in foreign lands those who are dependent upon them and for whose support they patiently work on, indulging the hope that ultimately they may bring to these shores a mother, or wife and children.' "

Alfson v. Bush Co., 182 N. Y. 293, 298, 75 N. E. 230, 231 (108 Am. St. Rep. 815), speaks to the same effect, as follows:

"The principal underlying the legislation we are considering is manifestly the protection of those who suffer pecuniary loss when a laborer or servant is killed by the negligent act of the individual or corporation employing him. The clear intention of the Legislature is that the negligent employer shall no longer escape the consequences of his act by the death of his servant, but shall

respond in damages to those who have suffered pecuniary loss. It is difficult to conceive of any argument springing from public policy, sound reason, or a proper discrimination between the rights of the citizen and the alien, that should prevent the alien husband, wife, or next of kin of a laborer, killed by reason of his employer's negligence, from receiving those damages that a jury has awarded a local legal representative, who derives his authority from and acts under the control of the Surrogate's Court. The damages are imposed upon a negligent employer as compensation to those who suffer by his act, and there is no valid reason, as it seems to us, why they should not be paid to the survivors, whether residing here or in some foreign jurisdiction. The statute not only benefits the survivors, but protects the laboring man, as it tends to enforce observance by the employer of the rule requiring him to furnish his servant a safe place in which to work. The laborer, leaving wife and children behind him and coming here from abroad has a right to enter into the contract of employment, fully relying upon the statute. The conflict of authority in England and our sister states leads us to deal with this question on principle and to base our answer to it on reasons that are weighty and controlling."

It is true that the case at bar does not involve the relation of employer and employé, nor is section 377 of the California Code limited to that relation; but it does include, with all other classes, employés whose deaths are negligently caused by the employers, and therefore the considerations based upon the relation of employer and employé, urged in the foregoing quotations, are as applicable here, the question being only a construction of the statute, as they would be to a case involving such a relation and brought under a special employer's liability act. To exclude nonresident aliens from the benefits of the section is to read into it a restriction which it does not contain, and to hold that employers may escape all liability to those engaged in their service for wrongful act or neglect by employing only alien laborers. The results of such a holding have been forcibly epitomized as follows:

"It is to refuse compensation to a certain class of persons for a real injury recognized by statute law. It is to relieve employers with respect to some employés from the exercise of due care in the employment of safe and suitable tools and machinery and competent superintendents. It is to offer an inducement to employers to give a preference to aliens and to discriminate against citizens. It is to hold that the Legislature of Massachusetts intended by this act to declare that employers should not be liable for the grossest negligence which results in the instant death of an alien employé in cases where his widow or next of kin happen to reside in a foreign country." Vetaloro v. Perkins (C. C.) 101 Fed. 394.

Surely such results condemn the construction from which they inevitably flow.

Another strange consequence of the doctrine contended for by defendants is illustrated in the English case of Davidsson v. Hill, [1901] 2 K. B. Div. 606, as follows:

"Here the plaintiff seeks to enforce her claim against an English subject, and I cannot see why she should not do so. If she has not the right, we should have the anomaly, as it seems to me, that, if a foreigner and an Englishman serving on the same ship were both drowned on the high seas by the same collision, negligently caused by an English vessel, the widow of the one could, and the widow of the other could not, obtain by suing the owners of the ship in fault in personam that reparation which our Legislature in those statutes has declared to be a just reparation."

From Romano v. Capitol City B. & P. Co., 125 Iowa, 591, 592, 593, 101 N. W. 437, 438 (68 L. R. A. 132, 106 Am. St. Rep. 323) may be aptly quoted the following:

"Counsel for appellee contend that the statutory provision (Code, § 3443) that 'all causes of action shall survive and may be brought, notwithstanding the death of the person entitled or liable to the same,' should not be given extra-territorial effect, and should be so construed as not to confer a benefit upon nonresident aliens. It seems to us, however, that they misapprehend the scope of the generally recognized doctrine that statutes have effect only within the jurisdiction of the sovereign power by which they are enacted. It is not claimed that this statute is to have any force and effect in Italy. The accident happened in Iowa; the person injured, as well as the defendant, is a resident of Iowa; and the wrong done by defendant, if any, was done in Iowa. It is difficult, therefore, to see how it can be urged that any question of extraterritoriality arises. The contention for appellee seems rather to be that a nonresident alien is not to be regarded as a person entitled to the benefits of the Iowa statute, although he comes within the plain terms of its provisions. The argument recalls the theory of the old Roman law that laws are personal, rather than territorial, in their application; for, under the doctrine of the Roman civil law, a Roman citizen only could assert the rights and avail himself of the remedies recognized by that system, and aliens, even though they might be residents, must resort to a wholly distinct jurisdiction to secure redress for wrongs which they may have suffered. Muirhead, Roman Law, § 25. It is unnecessary to say that the theory of the common law in this respect is wholly different. Under the common-law theory, laws are territorial in their operation; and, while a sovereign may legislate with reference to its subjects outside of its territorial jurisdiction, general legislation is assumed to apply to all persons residing, all property situated, and all rights arising within its territorial jurisdiction, regardless of the status of the parties as being citizens or aliens. As to the rights arising or recognized within the jurisdiction, a nonresident alien may maintain suit in the courts without any special statutory authority. Knight v. Railroad Co., 108 Pa. 250, 56 Am. Rep. 200; Kellyville Coal Co. v. Petraytis, 195 Ill. 215, 63 N. E. 94, 88 Am. St. Rep. 191; Vetaloro v. Perkins (C. C.) 101 Fed. 393. It would certainly strike the profession in this state as most extraordinary and unprecedented if we should hold that a nonresident alien could not, in the absence of express statutory authority, avail himself of a statutory remedy in our courts, such as that of an attachment or garnishment proceeding."

In line with this last suggestion, it may well be said that it would be a strange proposition in California to assert that the statutory liability of a stockholder does not inure to the benefit of a nonresident alien, although a creditor of the corporation.

Davidsson v. Hill, [1901] 2 King's Bench, 606, supra, is a decision in the same court with, but later than, Adam v. British, etc., S. S. Co., [1898] 2 Queen's Bench, 430, cited in defendants' brief, and expressly dissents from that case, and answers the argument made in Deni v. Penn. R. Co., supra, hereinbefore quoted, that no English case has been found holding that a nonresident alien is entitled to the benefits of Lord Campbell's act. On this point may be aptly quoted from the "case note" to Pittsburgh, etc., R. Co. v. Naylor, supra, the following:

"Since the statutes of the various states giving a right of action for negligent killing are copied from Lord Campbell's act, the construction placed upon that act by Adam v. British & F. S. S. Co., supra, doubtless greatly influenced the courts which denied the right of action in the earlier cases; and therefore the disapproval of that decision in the later case of Davidsson v. Hill, [1901] 2 K. B. 606, would seem to weaken, to some extent at least, the weight of those earlier decisions of the state courts."

In Philpott v. Missouri, Chesapeake v. Higgins, and Augusta v. Glover, supra, it is true that the party for whose benefit the action was brought was a resident of a sister state; but there is nothing in the reasoning of the courts, or upon principle, which would justify a denial of the remedy to an alien nonresident.

Other pressing demands upon my time will not allow me to further review in detail the cases above cited; but, after careful examination of them, I am of opinion that plaintiff's right to recover in this action, under section 377 of the Code of Civil Procedure of California, is supported by unanswerable reasoning and an overwhelming weight of authority.

Plaintiff, in his brief, rests his cause of action largely on the treaty between the United States and Japan (29 Stat. 848); but the conclusion which I have just announced renders it unnecessary for me to pass upon that contention.

The demurrer will be overruled, and defendant allowed to answer within 10 days.