McMILLAN, Administrator, Appellant, vs. SPIDER LAKE SAW MILL & LUMBER COMPANY, Respondent.

*September 4—October 21, 1902.*

*Master and servant: Personal injury: Dangerous place: Assumption of risk: Death: Recovery by nonresident aliens.*

1. Plaintiff's intestate, who had for a number of years worked at logging in the woods and as a teamster, was engaged in unloading logs at defendant's mill. Upon unhooking the chain which bound the load on a car, the logs would roll from the car and down a sandy slope to the mill pond. On the second day of his employment at that place, the deceased had unhooked the chain by jerking a trip line, and, while stepping backward to get out of the way of the logs, stepped into a hole two or three feet deep. Before he could rise the logs rolled over him and fatally injured him. Any one who looked could have seen the hole. *Held,* that decedent had assumed the risk.

2. Secs. 4255, 4256, Stats. 1898, do not give any right of action for the loss sustained by nonresident alien relatives of a person whose death was caused by a wrongful act, neglect, or default.

APPEAL from a judgment of the superior court of Douglas county: CHAS. SMITH, Judge. *Affirmed.*

This action was commenced August 21, 1901, to recover damages for the alleged negligent killing of the plaintiff's intestate July 7, 1900. The complaint alleges, in effect, that prior to July 6, 1900, the deceased was in the employ of the defendant as a teamster; that on that day the defendant put

him to work unloading logs, which were brought from the woods and hauled on cars by an engine to the mill of the defendant; that on the following day the deceased was engaged in unloading such logs, and while in the act of so doing he fell into a hole about two feet deep, and before he could get up the logs rolled against and over him, injuring him so that he died from the effects thereof on the same day; that for three months prior to the accident the hole had been there, and its existence was well known to the defendant and its servants; that there was slippery bark around the hole into which the deceased stepped; that it was the duty of the defendant to furnish the deceased with a reasonably safe place to work, and that the defendant was negligent in failing to do so, and that it was also negligent in failing to inform the deceased that the place was dangerous and unsafe. The complaint also alleges

"that plaintiff's intestate at the time of his death was an unmarried man, thirty-six years of age, and left, him surviving, his mother as next of kin, who was entirely dependent upon him for her support; that plaintiff's intestate at and prior to said injury was a strong, healthy, able-bodied, industrious man, earning and capable of earning fifty dollars per month; that for many years prior to his death he was continuously employed, and, but for his death, he would have, out of his earnings, provided for the support of his mother during the remainder of her life; that by reason of the aforesaid plaintiff has sustained damages in the sum of $2,000."

The defendant answered by way of admissions, denials, and counter allegations, and among others that the plaintiff was injured by, through, and on account of his own negligence or the negligence of his fellow-servants.

At the close of the testimony on the part of the plaintiff the court granted a nonsuit, and dismissed the complaint, with costs. From the judgment entered thereon accordingly, the plaintiff appeals.

For the appellant there was a brief by *W. P. Crawford* and *Crownhart & Foley,* and oral argument by *Mr. Crawford.*

For the respondent there was a brief by *Ross, Dwyer &
Hile,* and oral argument by *W. D. Dwyer.*

CASSODAY, C. J.    1.  It appears from the record and is un-
disputed that the deceased was thirty-six years of age, and a
strong, healthy man, and had worked in the woods for about
sixteen years, and had been in the employ of the defendant in
the logging business as a teamster for a year.    On the morn-
ing of July 6, 1900, he was set at work unloading logs from
the cars upon the landing, and continued such work until he
was killed in the forenoon of July 7, 1900.    During that time
he had assisted in unloading something like a dozen train
loads of logs.    The cars were twenty feet or more long, and
the logs were about the same length.    The facts attending the
accident, as stated by the plaintiff's counsel, are to the effect
that at the time of the accident four cars were brought in the
train; and that, as the train was being pulled onto the bank-
ing ground, the deceased hooked the trip line onto the fit hook
so as to unfasten the wrapper chain, and then, when the car
was pulled ahead and set in place to be unloaded, he walked
forward, and took hold of the trip line, and while standing
near the end of the car next to the engine he gave the trip line
a jerk, unfastening the wrapper chain, and while stepping
back to get out of the way he stepped into a hole about three
or four feet deep, and fell to the ground, and before he could
get up the logs rolled off the car and over him, and injured
him so that he died about three hours afterwards.    The soil
appears to have been a sandy slope from the railroad track
back to the mill pond.   The hole was three or four feet across
the top and three or four feet deep, and about two feet wide at
the bottom.    A brother of the deceased, who was sworn as a
witness in behalf of the plaintiff, testified to the effect that
anybody who looked at the hole could see it; that it was at
least two feet down to the bark, and that anybody could see
that who looked at it.    The law applicable to such a state of
facts is too well settled to require discussion.    *Sladky v. Mar-*

*inette L. Co.* 107 Wis. 250, 260, 261, 83 N. W. 514, and cases there cited; *Williams v. J. G. Wagner Co.* 110 Wis. 456, 86 N. W. 157; *Kreider v. Wisconsin R. P. & P. Co.* 110 Wis. 645, 657–659, 86 N. W. 662. We must hold that the deceased assumed the risk. Id.

2. It also appears from the testimony of the deceased's brother that the deceased left no issue, and was unmarried, and that his father was dead; that his mother was still living in Canada, where she had lived for many years; that she had no property; that the deceased had been accustomed to send his mother $10 a month when he could spare it; that she never lived in nor became a citizen of the United States; that his father lived nearly all his life at the same place where his mother did, and that he did not think he was ever a citizen of the United States. Upon such undisputed evidence it is claimed on the part of the defendant that under our statute this action cannot be maintained for the benefit of the mother of the deceased, a nonresident alien. The plaintiff claims a right to recover under secs. 4255, 4256, of the statute. The true meaning of those sections has been so fully and so recently considered by this court as to require nothing further to be here said, except to state the result and the application to the case at bar. Thus it has been held that:

"The right of action given by" those sections "to certain beneficiaries therein named is personal, and the damages are limited to a mere indemnity for the pecuniary injury resulting therefrom to such beneficiary, and the action therefor does not survive the death of such beneficiary, but abates upon his death, and cannot be revived in favor of his administrator." *Schmidt v. Menasha W. W. Co.* 99 Wis. 300, 74 N. W. 797.

So it has been held that:

"The liability created by sec. 4255, Stats. 1898, in case of the death of a person by an actionable injury for which such person could have recovered damages if death had not ensued, is for the benefit of certain relatives of the decedent mentioned in sec. 4256, Stats. 1898, and in default of such rela-

tives there is no liability." *Brown v. C. & N. W. R. Co.* 102 Wis. 137, 77 N. W. 748, 78 N. W. 771.

In that case it was further held that such right of action is separate and distinct from "the right of action for an injury to the person which survives under sec. 4253," even though death ensue from the injury. Id. See, also, *Hubbard v. C. & N. W. R. Co.* 104 Wis. 160, 80 N. W. 454; *Staeffler v. Menasha W. W. Co.* 111 Wis. 483, 487, 87 N. W. 480. Here the contention is that the plaintiff, as the personal representative of the deceased, has the right to recover damages for the pecuniary loss which his mother sustained by reason of his death, notwithstanding such right of action did not survive under sec. 4253. Did the sections of the statutes thus relied upon give such right of action for the benefit of such nonresident alien? The question is not whether the legislature had power to give such right of action, but whether the sections relied upon did give such right of action. It is claimed that the right "to maintain an action and recover damages" is given by the statute in general terms, and is broad enough to include aliens. The constitution declares that "no distinction shall ever be made by law between resident aliens and citizens, in reference to the possession, enjoyment or descent of property." Art. I, sec. 15. As indicated, the sections in question have no reference to the possession, enjoyment, or descent of property, nor the rights of property, where the death is instantaneous or without conscious pain, but simply give a new right of action, outside and independent of property. It has been held in England that *"prima facie,* and unless the contrary be expressed or be implied from the absolute necessity of the case, every legislature must be presumed to have intended by its enactments to regulate the rights which should subsist between its own subjects, and not to affect the rights of foreigners, whether by way of restricting or augmenting their natural rights." *Cope v. Doherty,* 4 Kay & J. 367. To the same effect is *The Zollverein,* 1 Swab. Adm. 96; *Jefferys v.*

*Boosey,* 4 H. L. Cas. 815. "It is conceded," said MARSHALL, C. J., "that the legislation of every country is territorial; that beyond its own territory it can only affect its own subjects as citizens." *Rose v. Himely,* 4 Cranch, 279. Mr. Story states the same rule thus:

"It is plain that the laws of one country can have no intrinsic force, *proprio vigore,* except within the territorial limits and jurisdiction of that country. They can bind only its own subjects, and others who are within its jurisdictional limits, and the latter only while they remain therein." Story, Confl. Laws, §§ 7, 20, 98, 278.

The general rule is that statutes are "presumed to have no extraterritorial force." Endlich, Interp. St. § 169. The same author says that:

"In general, statutes must be understood as applying to those only who owe obedience to the legislature which enacts them, and whose interests it is the duty of that legislature to protect; that is, its own subjects, including in that expression not only natural born and naturalized subjects, but also all persons actually within its territorial jurisdiction; but that, as regards aliens resident abroad, the legislature has no concern to protect their interests, any more than it has a legitimate power to control their rights. In this view it would be presumed, in interpreting a statute, that the legislature did not intend to legislate either as to their rights or liabilities; and to warrant a different conclusion *the words of the statute ought to be express, or the context of it very clear.*" Id. § 176.

Upon this principle, and under a statute similar to ours, it was held in Pennsylvania that "a nonresident alien mother has no standing to maintain an action against a citizen of Pennsylvania to recover damages for the death of her son." *Deni v. Pennsylvania R. Co.* 181 Pa. St. 525, 37 Atl. 558. In that case the court used this language:

"Our statute was not intended to confer upon nonresident aliens rights of action not conceded to them or to us by their own country, or to put burdens on our own citizens to be dis-

charged for their benefit. It has no extraterritorial force, and the plaintiff is not within the purview of it. While it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children, and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it." 181 Pa. St. 528, 529, 37 Atl. 559.

So it has been held in a case arising in Colorado that "nonresident aliens are not entitled to the benefit of the Colorado statute giving a right of action for death by wrongful act to the next of kin of the deceased, and cannot maintain an action thereunder." *Brannigan v. Union G. M. Co.* (C. C.) 93 Fed. 164.

Counsel for the plaintiff cite and rely upon *Mulhall v. Fallon,* 176 Mass. 266, 57 N. E. 386; *Kellyville Coal Co. v. Petraytis,* 195 Ill. 215, 63 N. E. 94; *Dennick v. Railroad Co.* 103 U. S. 11; *Vetaloro v. Perkins* (C. C.) 101 Fed. 393. In the first of these cases it was held that "a statute cannot impose duties upon a nonresident alien, but it may confer rights upon him." It is conceded by all that the legislature may confer such right of action upon nonresident aliens, but the question is, Has it done so by the general language employed in the statutes relied upon? In that case, HOLMES, C. J., uses this language:

"Under the statute the action for death without conscious suffering takes the place of an action that would have been brought by the employee himself if the harm had been less, and by his representative if it had been equally great but the death had been attended with pain. In the latter case there would be no exception to the right of recovery if the next of kin were nonresident aliens. It would be strange to read an exception into general words when the wrong is so nearly identical, and when the different provisions are part of one scheme." 176 Mass. 269, 57 N. E. 387.

In other words, that learned court puts such right of action in favor of the surviving relative, having no reference to the possession, enjoyment, or descent of property, upon the same

footing with a right of action for damages which the deceased might have maintained had death not ensued, and which would have survived his death for the benefit of his estate, and hence has reference to the enjoyment or descent of property. As indicated, this is in direct conflict with the ruling of this court, where it is held that the right of action which survives the death for the benefit of the estate of the deceased is separate and distinct from the right of action for the loss to surviving relatives. The one has reference to property, or the rights of property, of the deceased. The other has reference only to the loss sustained by the surviving relatives. The Illinois case cited follows and adopts the reasoning of the Massachusetts case cited. In *Vetaloro v. Perkins, supra,* the right of action arose under the statute of Massachusetts, one section of which is quoted, from which it appears that the two rights of action are put upon the same footing. That statute declares, in substance, that, "where an employee is instantly killed or dies without conscious suffering, as the result of the negligence of an employer," the surviving relative "may maintain an action for damages therefor, and may recover in the same manner and *to the same extent* as if the death of the deceased had not been instantaneous, or as if the deceased had consciously suffered." *Vetaloro v. Perkins* (C. C.) 101 Fed. 394. This broad difference between our statutes and the statutes of Massachusetts makes the adjudication in cases arising under that or any similar statute inapplicable to the case at bar. The cause of action in *Dennick v. Railroad Co.* 103 U. S. 11, arose under a statute of New Jersey, and the action was brought in New York, and removed to the federal court, and was otherwise distinguishable. The precise question here involved was not there considered; but it was held that the plaintiff could recover. There are, however, numerous cases to the contrary. A few only are cited. *Woodard v. M. S. & N. I. R. Co.* 10 Ohio St. 121; *Texas & P. R. Co. v. Richards,* 68 Tex. 375, 4 S. W. 627; *St. Louis I. M. & S.*

*R. Co. v. McCormick,* 71 Tex. 660, 9 S. W. 540; *De Harn v. Mexican Nat. R. Co.* 86 Tex. 68, 23 S. W. 381; *Mexican Nat. R. Co. v. Jackson,* 89 Tex. 107, 33 S. W. 857. We must hold that the sections of the statutes relied upon do not give to nonresident alien relatives of one who is instantly killed, or who dies without conscious pain, a right of action for the loss sustained by reason of such death.

*By the Court.*—The judgment of the superior court for Douglas county is affirmed.