E. ROMANO, Administrator of the Estate of NATALE CHI-
ESA, Deceased, Appellant, v. CAPITAL CITY BRICK
& PIPE COMPANY.

**Survival of actions:** ALIENS: ADMINISTRATORS: RIGHT TO SUE.  Un-
der Code, section 3443, an administrator may be appointed in this
State, and may maintain an action for an injury resulting in the
death of a resident alien, although it appears that the intestate's
sole heir was and continued to be a nonresident alien, and that de-
ceased left no estate to be distributed.

125 591
f129 254
h130 310

*Appeal from Polk District Court.*— HON. W. H. MC-
HENRY, Judge.

THURSDAY, NOVEMBER 17, 1904.

ACTION to recover damages for the death of intestate,
Natale Chiesa, occasioned by the negligence of defendant, in
whose employment he was working at the time of receiving
the injury which caused his death.   The defense interposed
was that Natale Chiesa was unmarried and without issue,
and that his next of kin was his mother, who is an alien
residing in Italy, and that he left no estate to be adminis-
tered upon, wherefore the letters of administration issued
to the plaintiff were without authority.   By way of reply,
plaintiff alleged that intestate left, as his only heir, his
mother, a citizen and resident of Italy, and that the mother
is entitled to the proceeds of the estate by reason of the pro-
vision of articles 22 and 23 of the treaty of commerce and
navigation between Italy and the United States (17 Stat.
856), concluded in 1871, which treaty continues in full
force and effect between the respective countries.   To this
reply a demurrer was interposed on the ground that it shows
upon its face that the suit is brought by an administrator
to recover for an injury to the person of intestate resulting

in death, and that such action does not survive to his mother, who, as his sole heir, does not reside here, and is now an alien, and that this action cannot be maintained by an administrator for her, and further, that the treaty pleaded does not include or provide for the survival of an action of this character for the benefit of a nonresident alien. The demurrer was sustained, and, plaintiff electing to stand upon his pleadings, the court dismissed the case and entered judgment against the plaintiff for costs, from which judgment plaintiff appeals.— *Reversed.*

*Miller, Wallingford & De Graff,* for appellant.

*Ryan, Ryan & Ryan,* for appellee.

McCLAIN, J.— It is conceded by counsel on each side that the question presented on this appeal is whether an administrator appointed in Iowa may maintain an action in this State for an injury resulting in death to a resident alien, when it affirmatively appears that intestate's sole heir was at the time of said death, and still is, a nonresident alien.

Counsel for appellee contend that the statutory provision (Code, section 3443) that " all causes of action shall survive and may be brought, notwithstanding the death of the person entitled or liable to the same," should not be given extraterritorial effect, and should be so construed as not to confer a benefit upon nonresident aliens. It seems to us, however, that they misapprehend the scope of the generally recognized doctrine that statutes have effect only within the jurisdiction of the sovereign power by which they are enacted. It is not claimed that this statute is to have any force and effect in Italy. The accident happened in Iowa; the person injured, as well as the defendant, is a resident of Iowa; and the wrong done by defendant, if any, was done in Iowa. It is difficult, therefore, to see how it can be urged that any question of extraterritoriality arises. The

contention for appellee seems rather to be that a nonresident alien is not to be regarded as a person entitled to the benefits of the Iowa statute, although he comes within the plain terms of its provisions. The argument recalls the theory of the old Roman law that laws are personal rather than territorial in their application, for, under the doctrine of the Roman civil law, a Roman citizen only could assert the rights and avail himself of the remedies recognized by that system, and aliens, even though they might be residents, must resort to a wholly distinct jurisdiction to secure redress for wrongs which they may have suffered. Muirhead, Roman Law, section 25. It is unnecessary to say that the theory of the common law in this respect is wholly different. Under the common-law theory, laws are territorial in their operation; and, while a sovereign may legislate with reference to its subjects outside of its territorial jurisdiction, general legislation is assumed to apply to all persons residing, all property situated, and all rights arising within its territorial jurisdiction, regardless of the status of the parties, as being citizens or aliens. As to the rights arising or recognized within the jurisdiction, a nonresident alien may maintain suit in the courts without any special statutory authority. *Knight v. R. Co.,* 108 Pa. 250 (56 Am. Rep. 200); *Kellyville Coal Co. v. Petraytis,* 195 Ill. 215 (63 N. E. Rep. 94, 88 Am. St. Rep. 191); *Vetaloro v. Perkins* (C. C.), 101 Fed. Rep. 393. It would certainly strike the profession in this State as most extraordinary and unprecedented if we should hold that a nonresident alien could not, in the absence of express statutory authority, avail himself of a statutory remedy in our courts, such as that of an attachment or a garnishment proceeding.

A few cases are cited in support of the general proposition that statutes are to be construed as applicable only in favor of persons within the jurisdiction. See, for example, *Jeffreys v. Boosey,* 4 H. L. Cas. 815; *Colquhoun v. Heddon,* 25 Q. B. D. 129; *Collom's Appeal,* 2 Penny. (Pa.)

130. But without going into a discussion of these and similar cases for the purpose of showing that they cannot be regarded as supporting the broad proposition that general statutory rights and remedies are not available to nonresident aliens, it is sufficient to say that no such general rule of construction has been adopted in jurisdictions where the common law prevails, nor, indeed, in those in which the civil law is recognized, for even in civil-law jurisdictions the principle of territoriality as opposed to that of personality of laws is now accepted.

Nevertheless, the misconception arising from the assumption of a general rule that statutes conferring benefits are to be construed as not extending to nonresident aliens has in some jurisdictions been applied in solving the identical questions which we now have before us; that is, the question whether a statute giving a remedy for an injury causing death is available for the benefit of nonresident aliens. Thus in *Deni v. Pa. R. Co.*, 181 Pa. 525 (37 Atl. Rep. 558, 59 Am. St. Rep. 676), it is said that " while it is possible that the language of the statute may admit of a construction which would include nonresident alien husbands, widows, children, and parents of the deceased, it is a construction so obviously opposed to the spirit and policy of the statute that we cannot adopt it." And the reasoning of that case is followed in *Brannigan v. Union Gold Mining Co.* (C. C.), 93 Fed. 164, by Hallett, District Judge, charging the jury in a similar case arising under the laws of Colorado. Likewise, in a recent case in Wisconsin *McMillan v. Spider Lake Sawmill Co.*, 115 Wis. 332 (91 N. W. Rep. 979, 60 L. R. A. 589, 95 Am. St. Rep. 947), the doctrine that the laws of one country can have no extrinsic force except within the territorial limits and jurisdiction of that country, is invoked to support the conclusion that the statute giving a remedy to the relatives of one who is instantly killed is not available to nonresident aliens. In *Adam v. British & Foreign S. S. Co.* (1898), 2 Q. B. D. 430, the same conclusion

93) ; and it was held, apparently by one judge, that a non-resident alien relative could not avail himself of the statutory remedy.   In his opinion, however, the judge does not of which was Lord Campbell's act (9 & 10 Vict., chapter is reached under the English fatal accidents acts, the first refer to two earlier decisions of the English courts in which a contrary conclusion was reached.   See The Guldfaxe, L. R. 2 A. & E. 325, and The Explorer, L. R. 3 A. & E. 289, in which Sir Robert Phillimore expressed, though with some doubt, the conclusion that a suit by a nonresident alien under Lord Campbell's act could be maintained in the British Admiralty Court.   It is suggested elsewhere that the two cases just referred to were overruled by the House of Lords in *Seward v. The Owner of the Vera Cruz,* L. R. 10 App. Cas. 59.   But that is not in accordance with the fact:   The only point decided by the House of Lords pertinent to the question was that the Court of Admiralty, under a statute giving it jurisdiction over any claim for damages done by any ship, did not have jurisdiction *in rem* over claims for damages for loss of life under Lord Campbell's act; and nothing said in that case is conclusive on the right of a nonresident alien to maintain such an action in the common law courts of England.

In the American cases in which it has been held that a nonresident alien could not maintain an action to recover the relief provided for by statutes similar to Lord Campbell's act, the lack of any English precedent for such recovery is commented upon; but such precedent is no longer wanting, even if the cases just cited are disregarded, for in *Davidson v. Hill* (1901), 2 K. B. D. 606, the question has been fully considered in opinions rendered by Sir William Rann Kennedy and Sir Walter Phillimore, and the conclusion is unequivocally announced that the fatal accidents acts apply as well for the benefit of representatives of a deceased foreigner as for those of a British subject — at all events, as against an English wrongdoer; and the principle

contended for in that case by the defendant, that acts of Parliament do not apply to nonresident aliens, unless the language of the statute expressly refers to them, is repudiated in such a case, and the Adam Case is overruled. Kennedy, J., uses this language: "It appears to me, under all the circumstances, and looking at the subject-matter, more reasonable to hold that Parliament did intend to confer the benefit of this legislation upon foreigners as well as upon subjects, and certainly that against English wrongdoers the foreigner has a right to maintain his action under the statutes in question." As the action was against the English owner of a British ship, he does not expressly hold that the same rule would be applicable if the death occurred through negligence in a collision upon the high seas where both parties were foreigners, or where the wrongdoers were foreigners and the sufferers English, though even as to that question he expresses the opinion that such an action could be maintained. Phillimore, J., says: "If an Englishman on board a foreign ship, or a foreigner on board a British ship, is run down by a British ship upon the high seas, it seems almost certain that an action would lie. Are the representatives of the foreigner on board a ship of one nationality, whose national law would probably give them at least as good a remedy as that given by the fatal accidents acts, to be deprived of their right to recover because they must have recourse to statute law instead of to the unwritten common law? I think not." And his reasoning with reference to the exact question is expressed in the following language: "I start with the proposition that if a man had not been killed, but only injured, he, during his life, could have maintained an action for damages; such an action being maintainable by the *lex fori* and by the *lex loci delicti commissi,* whether the *locus* be regarded as English or British, or as the high seas, over which maritime law, or maritime law as administered in this country, prevails." This case we regard as of great importance, because of the emphasis

placed in some of the American cases upon the construction of Lord Campbell's act in the English courts, and because it is more recent than any of the decisions of those courts in which the contrary conclusion is reached.

But the decided weight of authority in this country is against the proposition that nonresident alien relatives of a deceased person are not entitled to recover under statutes similar to Lord Campbell's act. A leading case is that of *Mullhall v. Fallon*, 176 Mass. 266 (57 N. E. Rep. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309, note) in which Chief Justice Holmes, after referring to *Adam v. British & Foreign S. S. Co., Deni v. Pa. R. Co.,* and *Brannigan v. Union Gold Mining Co., supra,* as cases supporting the contrary conclusion, announces the view of the Massachusetts court to be that the statute of that State is in the interest of the employe, and that, whether the action is to be brought by the relative or by the administrator, as the sum to be recovered is to be assessed as to the degree of culpability of the employer or negligent person, nonresident aliens are not intended to be excluded from the relief which the statute affords. He cites in support of his conclusion the following cases, which we have examined, and find to be more or less in point: *Luke v. Calhoun Co.,* 52 Ala. 115; *Augusta R. Co. v. Glover,* 92 Ga. 132 (18 S. E. Rep. 406); *Philpott v. Missouri Pac. R. Co.,* 85 Mo. 164; *Bruce's Administrator v. Cincinnati R. Co.,* 83 Ky. 174. It is true that these cases relate to right of recovery by a relative who is a citizen and resident of another State, and counsel in the case before us have urged that the rule as to nonresident aliens may well be different; but, if their contention is correct, that to give force to the statute in favor of a nonresident alien is to give it extraterritorial effect, then these decisions are in point, for a State statute has no more effect or operation in another State of the Union than in a foreign country; and it is no answer to say that, by a provision of the Federal Constitution, citizens of the other

States of the Union are not to be denied the privileges and immunities accorded to citizens of the State, for, if the statute is to be applied only for the benefit of those who are subject to State law, then residents of another State are excluded, as not among the persons for whose benefit the statute was passed.

The same conclusion as to the right of a nonresident alien to recover under the Massachusetts statute was reached in *Veialoro v. Perkins* (C. C.), 101 Fed. 393, decided in the Federal Circuit Court by Colt, Circuit Judge, before the Massachusetts court had passed on the question. The Massachusetts case has been followed in later decisions in other States. *Renlund v. Commodore Mining Co.,* 89 Minn. 41 (93 N. W. Rep. 1057); *Kellyville Coal Co. v. Petraytis,* 195 Ill. 215 (63 N. E. Rep. 94, 88 Am. St. Rep. 191); *Bonthron v. Phœnix Light & Fuel Co.,* (Ariz.) 71 Pac. Rep. 941, 61 L. R. A. 563. In the last case cited, after discussing the authorities pro and con, the court uses this pertinent language: " We do not think that, in order to entitle an alien to maintain this action, specific authority therefor must be granted said alien by the Legislature. The act is broad and comprehensive, and by its terms includes any surviving wife, husband, child, or parent, irrespective of their residence or citizenship; and this includes aliens, in the absence of any restrictive legislation. * * * The object of the act is to extend beyond the limits of the common law the right to recover reparation for a wrong, and we fail to see why, the wrong having been committed, the same reparation should not be given, whether those entitled to it are citizens of a State of our Union, or citizens of that country whose law we have inherited, and whose legislation in this instance we have adopted. An alien can maintain in our courts an action to enforce rights cognizable at common law, and a statute authorizing a right of action, if declaratory merely of the common law, in the absence of specific restriction, would not exclude aliens, or prevent them

from availing themselves of its benefits.   There is no difference in principle between such a case and a statute which grants rights not cognizable at common law, or extends rights beyond the limits affected by the common law.   In the absence of a specific restriction, the Legislature is presumed, by its enactment enlarging rights common to all, to have intended that such enlargement of rights be common to all."

That a statute giving a remedy for an injury causing death is not to be regarded as penal in its nature, and therefore limited, as to the remedy to be afforded under it, to the state of its enactment, is now well settled.   *Dennick v. R. Co.,* 103 U. S. 11 (26 L. Ed. 439) ; *Stewart v. Balt. & O. R. Co.,* 168 U. S. 445 (18 Sup. Ct. 105, 42 L. Ed. 537) ; *Boyce v. Wabash R. Co.,* 63 Iowa, 76.   And see *Huntington v. Attrill,* 146 U. S. 657 (13 Sup. Ct. 224, 36 L. Ed. 1123).

The English statute and most of the State statutes construed in the cases heretofore referred to give an independent right of action to the relatives of the deceased person — that is, they create a new right of action — and, even if we were of the opinion that the weight of reasoning is with those courts which hold that such new right of action is not maintainable by a non-resident alien relative, we should still find it necessary to consider whether, under our own statutes, the line of reasoning shall be followed.   By Code, section 3443, already quoted, the cause of action survives and may be brought notwithstanding the death of the person entitled to maintain the same; and under this provision it has uniformly been held in this State that the right of action is in the administrator for the benefit of the estate of the deceased person, and not in the relative suing in his or her own right. " In other words, the cause of action no longer dies with the party injured, as at common law, but passes to the administrator as assets of the estate.   It does not spring into existence from death, but, having a previous existence, does not perish with him who was entitled to maintain an action thereon."   *Sachs v. Sioux City,* 109 Iowa, 224.   " Nothing

in these statutes indicates a purpose to create a cause of action in favor of wife or child, save as they may share in the distribution of damages recovered, freed from any claim of creditors." *Major v. Burlington, C. R. & N. R. Co.,* 115 Iowa, 309; and see *Seney v. Chicago, M. & St. P. R. Co.* 125 Iowa, 290. By Code, section 3313, it is provided: " When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased; but if the deceased leaves a husband, wife, child or parent, it shall not be liable for the payment of debts." It is apparent, therefore, that our statutory provisions differ materially from those passed in analogy to Lord Campbell's act, for they do not create a new right of action, but abrogate the common-law rule by which an existing cause of action is terminated on the death of the party entitled to recover. That Natale Chiesa, had he survived the injuries received, could have maintained an action for damages against the defendant, must be conceded, for present purposes, in view of the allegations of the pleadings. That this cause of action survived his death, and could be made the basis of recovery by his personal representative, is expressly stated by the statutory provisions; and it is also expressly stated that the damages recovered in such an action are to be disposed of as a part of his estate. Now, we cannot see how, for the purposes of this action, it is necessary to determine who are his heirs, and as such heirs, will be entitled to distributive shares in his estate, whatever it may be.

It is contended for defendant that he left no estate to distribute, and therefore an administrator was improperly appointed; but that contention has been expressly negatived in *Morris v. Chicago, R. I. & P. R. Co.,* 65 Iowa, 727. The statute does not say, as do the statutes in many other States, that the recovery shall be for the benefit of certain named relatives, but expressly says that it is to be for the benefit

of the estate.   It will be soon enough to be concerned about
whether decedent's mother, a non-resident alien, is entitled to
the proceeds of the recovery, when the administrator is called
upon to make distribution of the estate of the deceased.   On
this last point, however, our attention is called to the case of
*Cleveland, C., C. & St. L. R. Co. v. Osgood* (Ind. App.) 70
N. E. Rep. 839, in which the Appellate Court of Indiana,
construing statutory provisions similar to ours, holds that no
right of action arises thereunder in behalf of the administra-
tor where the next of kin who would be entitled to recover
are non-resident aliens.   We are not satisfied with the con-
clusions reached in that case, either with reference to the
weight of authority of the cases relating to statutes similar
to Lord Campbell's act, or with reference to the proper con-
struction to be given to the statutory provisions such as those
found in Indiana and in our own State.   In *Tanas v. Mu-
nicipal Gas Co.,* 84 N. Y. Supp. 1053, the Appellate
Division of the Supreme Court of New York had before it
the identical question which we are now considering, arising
under a statutory provision of that State as follows:   " The
executor or administrator of a decedent, who has left, him
or her surviving, a husband, wife, or next of kin, may main-
tain an action to recover damages for a wrongful act, neglect,
or default, by which the decedent's death was caused, against
a natural person who, or a corporation which, would have
been liable to an action in favor of the decedent by reason
thereof if death had not ensued; " and the conclusion was
reached that such action could be maintained, although the
next of kin of the deceased were non-resident aliens.   The
court uses this language:   " The negligent killing was with-
in our own teritory, and by a citizen corporation of our State,
liable under its laws.   The deceased was a resident, al-
though an alien, and entitled to the protection and benefit
of both our common law and statutes.   There can be no
question that, if he had not died, he would have had a right
of action against the defendant; and we think his repre-

sentative can maintain the action prescribed by the statute, notwithstanding the ultimate fruits of the litigation shall pass to a non-resident alien next of kin.   *   *   *   To deny the action because the widow and next of kin are non-resident aliens is to incorporate into the sections of the Code a restriction which they do not contain.   It is to refuse compensation to a certain class of persons for a real injury recognized by the statute.   We see no reason, either from the probable intent of the Legislature, or from the holdings of our courts with respect to the act, why the exception contended for should be held to exist.   The words are broad, and comprehend every widow and all next of kin, whether citizens, residents, aliens, or non-resident aliens.   The only qualification is that the representative shall present such a cause of action as would allow the intestate to recover, had he not died."

In view of the conclusions already indicated, it is not necessary to follow counsel in a discussion of the question whether the right of action by the administrator, by which the mother of Natale Chiesa, a resident of Italy, is to receive ultimate benefit, is protected by the provision of the treaty between Italy and the United States that " the citizens of each of the contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other, *   *   *   and their representatives, being citizens of the other party, shall succeed to their personal goods, whether by testament or *ab intestato*," etc.   As already indicated, we think no question of that kind is at present before us.   We have now only to decide whether the plaintiff, duly appointed as administrator, may maintain this action.

We reach the conclusion that the decision of the trial court is erroneous, and its judgment is therefore *reversed*.