Davis, C. J.
The question raised in'this case is whether or not, notwithstanding the clear and unqualified language of Revised Statutes, sections 6134 and 6135, an action can be prosecuted for the benefit of the next of kin of the person whose death has been wrongfully caused, when the next of kin are non-resident aliens.
It is admitted that the literal terms of these sec- ■ tions would not exclude from the benefits of the statute next of kin who are non-resident aliens; for in section 6134 it is provided that: “in every such case’’ of wrongful death a liability to an action for damages attaches, while in section 6135 no exception which would exelude a non-resident alien can be found. But it is contended, 1. That the statutes of any country, in the absence of express wofds to *120 the contrary, are to be interpreted as applying to the citizens of that country only; 2. That the statutes of no country can be presumed to operate beyond the territorial limits of the country so as to confer rights or impose liabilities upon aliens; 3. That to include non-resident aliens is obviously opposed to the spirit and policy of the statute, and 4. That our statute is adapted from the English statute which is commonly known as Lord Campbell’s Act, and that the English courts so interpret that act as to exclude non-resident aliens. In support of these propositions the counsel for the plaintiff in error cite the following' authorities: ‘Story Conflict of Laws, secs. 7 and 20; Endlich Interpretation of Stat., sec. 176; Deni v. Penna. Co., 181 Pa. St., 525; Brannigan v. Gold Mining Co., 93 Fed. Rep., 164; McMillan, Admr. v. Spider Lake Sawmill & Lumber Co., 115 Wis., 332; C. C. C. & St. L. Ry. Co. v. Osgood, Admr., 70 N. E. Rep., 839; and Adam v. Brit. & For. S. S. Co., L. R. 2 Q. B., 430.
In regard to the first proposition contended for by the plaintiff in error, it is important to note that many years ago this court held that “where the words of a statute are plain, explicit and unequivocal, a court is not warranted in departing- from their obvious meaning.” This principle of construction was adhered to in that case, notwithstanding the fact that the court was convinced by extraneous circumstances that the legislature intended to enact something very different from that which they did enact. Woodbury v. Berry, 18 Ohio St., 456. That casé has been cited and approved many times in this court and in the courts of last resort in other states, as well as in Thornley v. United States, 113 U. S., 310. It must therefore be regarded as laying down *121 a cardinal rule of interpretation, at least for this jurisdiction.
Moreover, it seems to us to be a misinterpretation of Mr. Endlieh to cite his book as an authority for the proposition contended for here. He refers to the dicta of the judges in the celebrated copyright case of Jefferys v. Boosey, 4 H. L., 815, and says, “It has been said indeed, that when personal rights are conferred, and persons- filling any character of which foreigners are capable are mentioned, foreigners would be comprehended in the statute.” That is one view, the dictum of Maule, J., in Jefferys v. Boosey, and of Lord Westbury in Routledge v. Low, 3 H. L., 100. Then he proceeds, “On the other-hand, it has been laid down that, in general, statutes must be understood as applying to those only who owe obedience to the legislature which enacts them, and whose interests it is the duty of that legislature to protect; * * * that as regards aliens resident abroad, the legislature has no concern to protect their interests, any more than it has a legitimate power to control their rights.” This is the second view deducible from dicta in Jefferys v. Boosey. Mr. Endlich then continues: “In this view,” that is the latter of the two views, “it would be presumed, in interpreting a statute, that the legislature did not intend to legislate either as to their‘rights or liabilities; and to warrant a different conclusion, the words of the statute ought to be express, or the context of it very clear.” We think that the rule of statutory construction prevailing here, adverted to above, would require a presumption just the contrary of that contained in the second view mentioned by Mr. Endlieh; and indeed, the authority of that view was overturned by the decision in Davidsson v. *122 Hill, L. R. 2 K. B. Div., 606 (1901), and, the reasoning by which it is supported has been fully and completely answered by Kennedy, J., and Phillimore, J., in that case.
The second proposition which is advanced in behalf of the plaintiff in error has already been discussed in part; but it may be added that no extraterritorial effect is sought to be given to this statute. Marino was killed in the state of Ohio by the plaintiff in error. The killing is alleged to be wrongful under the laws of Ohio. A man who is a citizen and resident of Ohio, is duly appointed in Ohio as administrator of the estate of the deceased, and brings suit in Ohio to recover as damages a judgment for the benefit of the widow and children of the deceased, as provided by the laws of Ohio. Is this giving effect to the laws of Ohio in Italy ? It is hardly incidentally or remotely so. These foreigners come into the courts of this state, by their legal representative, according to the forms prescribed by the law of this state, and they ask for compensation for a wrong which has been done to them. The answer to them is that they were absent from the state of Ohio when the trespass occurred. If they had been citizens of Ohio their absence in Italy would have made no difference. Nor would the fact that they are aliens be decisive against their right to recover; for, although aliens, if they had been residents of Ohio at the time of the trespass they might recover. The actual presence in the state of the next of kin of the deceased at the time of the injury is not required by the statute to create a right of action. The injury may be complete although the next of kin may be at the time in another country. The plaintiffs have not sought to enforce the laws of Ohio in another juris *123 diction, but tbey have come into tbe courts of Ohio to enforce tbe laws of Obio in their own behalf. , Tbe objection made to tbis is that tbe statute of Obio does not apply in favor of non-resident aliens. If there bad been three men instead of one, killed at tbe same time, and tbe widow of one was a citizen of Obio, tbe widow of another a resident alien and tbe widow of tbe third a non-resident alien, it is admitted that the first and second could recover and it is contended that tbe third could not; yet tbe language of tbe statute is tbe same as to tbe rights of all of these parties. It seems to us, therefore, that it is not a question of territorial jurisdiction; but that when a non-resident alien comes into tbe courts of tbe state for redress under tbe laws of tbe state, as be may do, it is merely a question of construction of tbe statute to determine whether be is excluded from its benefits.
We have no disposition to controvert tbe proposition that a statute of one state cannot impose obligations or liabilities on citizens of another state or country, not residing in tbe state enacting the statute; but we take it to be a self-evident proposition that a state, if there are no constitutional limitations on tbe general legislative power, may confer rights, privileges or immunities upon non-resident aliens which they may accept, if not prohibited by tbe government to which they owe allegiance. Thus, in our own state all disabilities of aliens as to inheritance are removed by statute (Revised Statutes, section 4173). Numerous examples of the exercise of such legislative power may be found noted in 2 Cyc., 100-101. State v. Smith, 70 Cal., 153, affords a very striking illustration; and see Mulhall v. Fallon, 176 Mass., 266. And tbis being so, we have not yet been *124 able to perceive any good reason for raising a presumption that the legislature intended to exclude non-resident aliens from the privilege of tbe statute when its language is, “in every such case.”
Again, we have not found any persuasive force in tbe suggestion made in Deni v. Pennsylvania R. R. Co., supra, that tbe interpretation which includes non-resident aliens is contrary to the “spirit and policy” of the statute. The policy of the statute is plainly stated, and it is that “whenever,” not in certain cases, “the death of a person shall be caused by wrongful act, etc., then in every such case the corporation which or the person who, etc., shall be liable to an action for damages, etc. ’ ’ Section 6134. “Every such action shall be for the exclusive benefit of the wife,” etc., and the amount received by the personal representative shall be apportioned among the beneficiaries, etc. Section 6135. Obviously, the purpose of the statute, judging from its language, is to give relief in damages to the next of kin in all cases of wrongful death, notwithstanding that no right of action would have survived at common law. Consequently it is not apparent to us that it is inconsistent with the “spirit and policy” of the statute to allow this remedy for such a wrong to a non-resident alien; for if non-resident aliens be excluded from the privilege of the statute, then the remedy is not to all, but only to some of the cases of that description. This statute unequivocally declares the law of this state to be that there shall be a right of action in favor of the next of kin of the deceased in all cases of wrongful death occurring in Ohio. Should such an explicit declaration be set aside by the mere suggestion that the general assembly was legislating for its own jurisdiction and for the citizens and residents of *125 Ohio only? We think that the presumption is rather that the general assembly meant what it has said in unambiguous language; and that a non-resident foreigner coming into this jurisdiction and asking redress for an injury done to him in this state and contrary to the law of this state, although he was absent from the state' at the time, is entitled to be heard in the same manner as a resident foreigner or a citizen.
In this connection, and inasmuch as the supreme court of Pennsylvania in Deni v. Pennsylvania R. R. Co., supra, seems to place much emphasis on the policy of that state as to exemption laws, it is pertinent to cite Sproul v. McCoy, 26 Ohio St., 577, in which this court held that the exemptions from sale or execution allowed to “every person who has a family?’ by the act of April 16, 1873 (70 O. L., 132; see Rev. Stat., sec. 5430), may be claimed by any debtor against whom an action is prosecuted in the courts of this state, whether such debtor be or be not a resident of this state. The rule of interpretation which was adopted in Woodbury v. Berry, supra, was there applied to the exemption statute and it does not seem to have led the court to a wrong conclusion; for in that respect the statute of Ohio remains without change to this day.
Finally, it is urgently argued for the plaintiff in error that this is an English statute and that we should adopt the English construction of the statute, citing Adam v. Brit. & For. S. S. Co. (1898), L. R. 2 Q. B., 430. The act 9 and 10 Vict. c. 93, commonly known as Lord Campbell’s Act, had been in effect more than fifty years when this question was raised and decided in that case. At the time that the act was adopted in Ohio, there had been no adjudication and, *126 so far as we know, no suggestion of this question. We are not bound, therefore, by this decision in the Queen’s Bench Division. We find, however, a later decision in the same court, Davidsson v. Hill (1901), L. R. 2 K. B., 606, in which, after careful and full consideration in opinions by Kennedy, J., and Phillimore, J., the ruling was directly opposed to the ruling in Adam v. Brit. & For. S. S. Co., supra, and in accord with the views which we have expressed above.
A notable change in the attitude of the court is found in the Indiana case which is cited for plaintiff in error, C. C. C. & St. L. Ry. Co. v. Osgood, decided in the appellate court, second division, April 21, 1904, 70 N. E. Rep., 839. When the same case was again before the same court, February 16, 1905, 73 N. E. Rep., 285, it was held that an administrator appointed in the state may sue to recover for the death of a resident, although the ultimate distribution of the proceeds of the action will go to á nonresident alien, where the laws of the country in which such alien resides authorize a similar recovery in favor of alien next of kin.
There are other cases, in addition to those cited in the briefs for the defendant in error, which are in accord with the views which we have expressed. Romano v. Capital City Brick & Pipe Co., 125 Ia., 591; Tanas v. Municipal Gas Co., 84 N. Y. Supp., 1053; Alfson v. Bush Co. Lim. (Court of Appeals of New York, Oct. 3, 1905), 75 N. E. Rep., 230; Bonthron v. Phoenix Light, etc., & Fuel Co. (Arizona),. 71 Pac. Rep., 941; Renlund v. Commodore Mining Co., 89 Minn., 41; Pocahontas Collieries Co. v. Bukas’ Admr. (Court of Appeals of Virginia, June 28, 1905), 51 S. E. Rep., 449.
*127 It seems to us that the right of the defendant in error to maintain this action in behalf of the wife and children of his decedent notwithstanding that the wife and children are. non-resident aliens, is supported by the sounder reasoning and by the greater weight of authority; and therefore the judgment of the circuit court is

Affirmed.

Price, Crew and Summers, JJ., concur.