ANTONIO PHILES, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 7, 1910.

1. **PRACTICE: Weight of Evidence.** Where there is substantial evidence supporting a verdict, it is not the duty of the appellate court to pass upon its weight.

2. **EVIDENCE: Laws of Foreign Country: Greek Birth Records: Harmless Error.** In order to prove the relationship of plaintiffs to a deceased person they offered in evidence a copy of the registry of births of the village where deceased was born, in the province of Corinth, Greece, certified to by the mayor, whose signature was attested by the Minister of the Interior, whose signature was attested by the U. S. Consul at Athens. There being no proof that the laws of Greece required such registration of births, the copy in question was not admissible as evidence, notwithstanding the copy itself may have been formally attested. But as the fact was proved by oral evidence, and as there was no countervailing evidence, the error in admitting such record was harmless.

141 App.—36

3. **DEATH: Cause of Action Under Kansas Statute: Alien.** The right of action conferred by the statutes of Kansas upon the next of kin for death caused by wrongful act lies in favor of an alien.

4. **DEATH: Kansas Fellow Servant Law: Notice.** The notice of accident required by the fellow servant act of Kansas need not be given when the cause. of action is not based on that act.

5. **CAUSE OF ACTION: Local or Transitory: Kansas Venue Statutes.** Section 4821, G. S. Kansas 1905, designates the jurisdiction in which suits against railroads and other common carriers shall be brought. It has no application to suits brought in this State. The jurisdiction of the courts of this State over every class of litigation is regulated by our own code.

6. **EVIDENCE: Proof of Negative Fact: Sufficiency of Evidence.** The Kansas statutes provide that an action for death by wrongful act may be brought by the next of kin where the residence of the party at the time of his death was in another state or territory or where no personal representatives has been appointed. Plaintiff offered no direct evidence that a personal representative had not been appointed. The testimony showed that he had no fixed place of abode, that he was a foreigner, with little ·or no property. It is probable that no administration was asked or made. It was therefore not necessary to show directly that there had been no administration.

7. **DEATH: Kansas Statute: Action by Administrator: Right or Remedy.** That part of the Kansas statutes which provides that the action to recover damages for death by wrongful act may be brought in the name of the administrator goes merely to the remedy and not to the right. As the plaintiffs were the parties in interest they were the proper parties plaintiff under the Missouri code.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

AFFIRMED.

*Elijah Robinson* for appellant.

(1) There was no substantial evidence to sustain a verdict for the plaintiffs. Powell v. Railroad, 76 Mo.

80; Commissioner v. Clark, 94 U. S. 284; Bank v. Bank;
10 Wall. 639; Jackson v. Hardin, 83 Mo. 175; Avery v.
Fitzgerald, 94 Mo. 207; Long v. Moon, 107 Mo. 338;
Moore v. Railroad, 28 Mo. App. 622; Peck v. Railroad,
31 Mo. App. 123; Zurfluh v. Railroad, 46 Mo. App. 636;
Peffer v. Railroad, 98 Mo. App. 291; Railroad v. Shir-
tle, 97 Pa. St. 450.    (2) The evidence shows the gross-
est kind of negligence on the part of the deceased, which
was the direct and proximate cause of the accident.
Kitzberger v. Railroad (Neb.), 30 Am. and Eng. R.
Cases (N. S.), 275; Teuker v. Railroad (Pa.), 32 Am.
and Eng. R. Cases, 54; Dolphin v. Railroad (Mass.),
29 Am. and Eng. R. Cases, 341; Fielding v. Railroad
(Neb.), 38 Am. and Eng. R. Cases, 769; Aerkfetz v.
Humphrey, 145 U. S. 418.    (3) No notice of the acci-
dent was served on the defendant, as required by the
statutes of the State of Kansas.    Sec. 6313, Gen. Stat.
of Kan. 1905 (Dassler).    (4) Under the statutes of
the State of Kansas suit could be maintained only in
the county where the accident occurred, which was Sa-
line county, Kansas, or in the county where defendant
had its principal office and place of business in the
State of Kansas, which was Atchison county.    Sec.
4921, Gen. Stat. of Kan. 1905 (Dassler).    (5) The de-
ceased and the plaintiffs all being aliens, the plaintiffs
were not entitled to the benefit of the statutes of Kan-
sas under which this suit was prosecuted.    Sec. 4872,
Gen. Stat. of Kan.; Deni v. Railroad, 181 Pa. St. 525.

*Wm. S. Gabriel* and *Conkling, Rea & Sparrow* for
respondent.

(1) The demurrer to the evidence was without
merit and properly overruled.    Charlton v. Railroad,
200 Mo. 413; Mockowik v. Railroad, 196 Mo. 550;
Forbes v. Dunnavant, 198 Mo. 193; St. Louis v. Rail-
road, 114 Mo. 13; McFern v. Gardner, 121 Mo. App. 1.
(2) The Kansas notice statute pleaded by defendant
only applied to the negligence of fellow servants and

is not pertinent to this case, although plaintiffs' testimony established a substantial compliance therewith. Railroad v. Little, 75 Kan. 716, 90 Pac. 447; Mitchell v. Milling Co., 12 Colo. App. 277, s. c., 26 Colo. 284, 58 Pac. 28; Ryalls v. Mills, 150 Mass. 190, 5 L. R. A. 667. (3) Actions on death statutes of other States may be maintained in the Missouri courts. Lee v. Railroad, 195 Mo. 400; Burdict v. Railroad, 123 Mo. 221; Gray v. McDonald, 104 Mo. 303; Hennessy v. Brewing Co., 63 Mo. App. 111. (4) An alien is entitled to maintain an action for wrongful death. The later American and English decisions establish this right. Gaska v. Car & Foundry Co., 127 Mo. App. 169; King of Prussia v. Kueppers, 22 Mo. 550; Philpott v. Railroad, 85 Mo. 164; Romano v. Brick Co., 125 Iowa 591, 101 N. W. 437, 68 L. R. A. 132; Bonthron v. Light & Fuel Co. (Ariz.), 71 Pac. 941, 61 L. R. A. 563; Mulhall v. Fallon, 176 Mass. 266, 57 N. E. 386, 54 L. R. A. 834; Vetaloro v. Perkins, 101 Fed. 393; Renlund v. Mining Co. (Minn.), 93 N. W. 1057; Coal Co. v. Patraytis, 195 Ill. 215, 63 N. E. 94; Tanas v. Gas Co., 84 N. Y. Supp. 1053; Knight v. Railroad, 108 Pa. St. 250; Luke v. Calhoun, 52 Ala. 115; Railroad v. Higgins, 85 Tenn. 620; Davidson v. Hill, 70 L. J. Q. B. 788; The Explorer, L. R., 3 Adm. & Ecc. 289. (5) The court did not commit error in permitting Tom Philes to testify in rebuttal. Wheeler v. Land Co., 193 Mo. 279; Garland v. Smith, 127 Mo. 567; State v. Murphy, 118 Mo. 7; Tierney v. Spiva, 76 Mo. 279.

BROADDUS, P. J.—This is a suit, by the next of kin of Anastasion Philes to recover under the Kansas statute, for his death, which occurred by reason of alleged negligence on defendant's line of railroad near Gypsum City, Kansas, on the 11th of July, 1905.

It was shown that deceased had no wife nor children and evidence was introduced to show that plaintiffs were his next of kin.

The action was based upon section 4871, General Statutes of Kansas of 1901. It is as follows:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor, against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damage cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

Section 4372 of the Kansas statute provides:

"That in all cases where the residence of the party . . . is or has been at the time of his death in any other state or territory, or when, being a resident of this state, no personal representative is or has been appointed, the action . . . may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The deceased was born in Loutron in the province of Corinth, Greece, and was twenty-six years of age. He came to America in 1903, and for a short while he stayed in Kansas City, Missouri. He then went to work for defendant and was in its employ for more than one year, during which time he was transferred from place to place on defendant's line of railroad where the company had work to be done, living and sleeping all the while in a caboose. He received as wages forty dollars a month, half of which he sent to his father. There was evidence tending to show that he intended to return to his native land.

At the time of his death he was a laborer on a construction train of defendant at Gypsum City, Kansas, and while he was at work was thrown off and run over by the train. He and other Greek laborers, about twenty-eight in number, were helping to ballast defend-

ant's track.   The train was managed by defendant's trainmen.   They had taken, to a point near where the deceased met his death, a train consisting of an engine and tender and about twenty-one loads of ballast, the engine at the east and the caboose at the west end of the train.   The method of doing the work was to detach two carloads of the ballast from the train at a time, and have the engine haul them along the track the desired distance and then dump the ballast on the track.   The cars were ordinary coal cars, with trap doors about two and one-half feet from each end.   The trap doors would then be opened and the ballast dropped onto the track. After a certain amount of ballast had been put down at a place the car would be moved forward, where the operation would be repeated, and so on until the ballast in the cars had been all taken out.   Then the two empty cars would be backed by the fireman in charge of the engine west, to be coupled on to two other loaded cars.   The business of the brakeman was to couple and uncouple the cars and give the necessary signals.

On the occasion in question after several cars had been detached and unloaded in the manner described, two that had been unloaded were backed to the train for the purpose of being attached to two loaded cars, plaintiff and other laborers riding in the empty cars as was the custom.   Just after two loaded cars had been detached and attached to the unloaded cars, the plaintiff and other laborers attempted to pass from the rear empty car to the loaded car, while they were in motion.   Plaintiff fell off, was run over by the wheels of the cars and was killed.

There is a conflict in the testimony as to why deceased and the other attempted, while the car was in motion, to go from the empty car to the one loaded. It is contended by defendant that there was no necessity for the workmen to do so, and that they had been warned by the brakeman not to attempt it until the

car had reached the place where they had been unload-
ed. The plaintiff's evidence tends to show that the
fireman in charge of the engine suddenly moved the
train after the coupling had been made without any
signal that he was going so to do; that it was the cus-
tom of the men by the direction of the foreman, to pro-
ceed to pass at once from the empty to the loaded
car, as soon as the couplings had been made, until the
brakeman signaled or warned them that the train was
about to move. This was the testimony of at least two
of the workmen. There was no direct evidence going
to show whether an administrator had been appointed.

The defendant contends that there was no sub-
stantial evidence to sustain the verdict and that the
court erred in not sustaining its demurrer to plaintiffs'
case. The plaintiffs' witnesses were Greeks and it is
insisted that their testimony is full of contradictions
and so unreasonable that it is not entitled to any credit
whatever. Only one of them was able to testify except
through an interpreter, which accounts to some extent
for apparent discrepancies in their statements. But
their evidence as shown by the record is very positive
as to certain facts which go to show that the laborers
were required to go from one car to the other without
delay, without loss of time, and they were to be gov-
erned by the signal of the brakeman who cried out in
Greek *prosecetete* which means look out; and that the
car was moved at the time without first giving this
signal. We believe the appellate courts have evinced
too much hesitation to interfere, when they should,
with the verdicts of juries when they are founded on
slight testimony and where the countervailing testimony
is great and convincing. This is not a case of that
kind. While the preponderance is greatly in favor of
defendant, at the same time there is substantial evi-
dence on the part of the plaintiffs to support the find-
ing. It is not our duty to pass upon the weight of tes-
timony, but to determine its legal effect. It is the duty

of the trial judge to pass upon the weight of the evidence upon a motion for a new trial.

The plaintiffs in order to prove their relationship to deceased introduced in evidence a copy of the registry of births of the village of Loutron, in the province of Corinth, Greece, certified to by the mayor, whose signature was attested by the prefect of Corinthia, whose signature was attested by the Minister of the Interior, whose signature was attested by the United States Consul at Athens. The admission of this document is assigned as error. It is said that no court takes judicial cognizance of the laws of a foreign country, but they must be proved as a fact. [Greenleaf Ev., vol. I, sec. 486.] There being no proof that the laws of Greece required such registration of births, the copy in question was not admissible as evidence notwithstanding the copy itself may be formally attested. But its admission as evidence was a harmless error as the birth place of the deceased was proved by oral testimony and so was his relationship to the plaintiffs. There was no countervailing testimony introduced and it was a sufficient basis for the finding by the jury.

The plaintiffs were all residents of the Kingdom of Greece, it is therefore insisted that as such they cannot sue in the courts of this State. It is so held by the courts of some of the States of the Union, for instance in Pennsylvania. [Deni v. Railroad, 181 Pa. St. 525.] It is however held that legislation conferring a right of action in this class of cases does apply to nonresident aliens. [Vertaloro v. Perkins, 101 Fed. 393.] "One is not disqualified on account of being a non-resident alien to maintain an action under the statutes giving damages to the next of kin of a deceased person who is killed by the fault of another." [Gaska v. Car & Foundry Co., 127 Mo. App. 169.] The Supreme Court has determined that the provisions of the statute are for the benefit alike of the resident and non-resident.

[Philpott v. Railroad, 85 Mo. 164; Romano v. Brick & Pipe Co., 125 Iowa 591.]

The defendant for defense alleged that no notice of the accident was served on the defendant as required by section 6313, General Statutes of Kansas, 1905. This section applies to actions brought under the fellow-servant act, and has no application to the cause of action given under section 4871, the section upon which the suit is predicated, which gives to the next of kin a right of action where such right existed at common law in favor of the deceased. [Railroad v. Little, 75 Kan. 716.] Section 4821 designates the jurisdiction in which such suits shall be brought as against railroads and other common carriers. This provision is interposed to defeat plaintiff's cause of action. A sufficient answer to this objection is that the law of Kansas in that respect does not obtain in this State. The jurisdiction of the courts of this State over every class of litigation is regulated by its own code.

There was no direct evidence that an administrator had not been appointed for deceased's estate. It is urged by defendant, until that fact is shown plaintiffs under the Kansas statute have no right to sue in their own name; and that if there is such an administrator the suit could only be maintained in his name. The statute, as we have seen it, applies to instances where the deceased was either a resident of Kansas or of a foreign State or Territory. The plaintiffs contend that proof that no such administrator had been appointed is necessarily of a negative character and that they have sufficiently complied with the rule establishing a negative allegation. It is said: In "those cases, in which the plaintiff grounds his right of action upon a negative allegation, and where, of course, the establishment of this negative is an essential element in his case . . . it is obvious that plenary proof on the part of the affirmant can hardly be expected, and therefore it is considered sufficient if he offer such evidence as, in the ab-

sence of counter testimony, would afford ground for presuming that the allegation is true." [Greenleaf on Ev., vol. 1, sec. 78.] It is conceded that the deceased had no place of abode; that he went from place to place and lived in a car on defendant's track; and it appears that he and his friends and relations were all foreigners, and with a single exception unacquainted with the customs, language and laws of the country. The evidence tends to show that deceased had little or no property. Under these circumstances it is probable that no administration was asked of the authorities and none made. With the view we entertain it was not necessary to show that there had been no administration. Had the action been brought in the State of Kansas it would have been necessary to make such proof, but not so in this State for the evident reason that the statute providing in the first place that a suit to recover in such cases may be brought in the name of the administrator goes merely to the remedy and not to the right. The plaintiffs being the real parties in interest the suit was properly brought under our code. Affirmed. All concur.